UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF ILLINOIS, et al., *Plaintiffs*, v. FEDERAL EMERGENCY MANAGEMENT AGENCY, et al., *Defendants*. | No. 1:25-cv-206-WES-PAS |

# EXHIBIT 9

U.S. Dep't of Just., *General Policy Regarding Charging, Plea Negotiations, and Sentencing* (Feb. 5, 2025)



**Office of the Attorney General**
**Washington, D. C. 20530**

February 5, 2025

MEMORANDUM FOR ALL DEPARTMENT EMPLOYEES

FROM:  THE ATTORNEY GENERAL

SUBJECT:  GENERAL POLICY REGARDING CHARGING, PLEA NEGOTIATIONS, AND SENTENCING[1]

The Department of Justice is the only federal agency with a name that includes a moral imperative: to do justice. Pursuant to that mission, prosecutors are tasked with protecting the public, enforcing the law in a fair and consistent fashion, and conducting themselves in a manner that promotes respect for the legal system and the rule of law. These tasks require the exercise of discretion. However, prosecutorial discretion is bounded by the Constitution, statutes and case law, state and local ethical requirements, and policy decisions set forth by the President. To highlight those boundaries, this memorandum sets forth the Department's general charging, plea bargaining, and sentencing policy, effective immediately.

### I. Charging Decisions

Prosecutors in all components and U.S. Attorneys' Offices make charging decisions in two steps. At the first step, the question is *whether* federal charges are appropriate. At the second step, the question is *what* charges are appropriate.

At step one, when determining *whether* federal charges are appropriate, prosecutors must consider a variety of factors, including whether there is probable cause to believe that a federal crime has been committed within the prosecutor's jurisdiction, whether the prosecution would serve a substantial federal interest, and alternatives to prosecution. Justice Manual § 9-27.220. Critically, in determining whether to commence or recommend prosecution or take other action against a person, a prosecutor "may not be influenced"—in any respect—by the person's "political association, activities, or beliefs." *Id.* § 9-27.260(1). There is no place in the decision-making process for animosity or careerism, *i.e.*, the "possible effect of the decision on the attorney's own professional or personal circumstances." *Id.* § 9-27.260(2)-(3). These types of considerations, which previously led to the improper weaponization of the criminal justice system at the federal

---

[1] This guidance is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

Case 1:25-cv-00206-WES-PAS    Document 21-9    Filed 05/19/25    Page 3 of 6 PageID #: 295

Memorandum for all Department Employees
Subject: General Policy Regarding Charging, Plea Negotiations, and Sentencing    Page 2

and state levels, as President Trump observed in Executive Order 14147, 90 FR 8235, have no place in the Department.

At step two, when a prosecutor must decide *what* federal charges are appropriate, "considerable care is required to ensure selection of the proper charge or charges." Justice Manual § 9-27.300. Prosecutors must conduct "an individualized assessment of all the facts and circumstances of each particular case." *Id.* During that assessment, prosecutorial discretion shall be guided by the core principle set forth in the Attorney General's *Memorandum on the Department Charging and Sentencing Policy* (May 10, 2017). Specifically, in the absence of unusual facts, prosecutors should charge and pursue the most serious, readily provable offense. The most serious offenses are those punishable by death, or those with the most significant mandatory minimum sentences (including under the Armed Career Criminal Act and 21 U.S.C. § 851) and the most substantial recommendation under the Sentencing Guidelines.

It bears repeating that the core principle applies **in the absence of unusual facts**. Thus, there may be circumstances in which good judgment would lead a prosecutor to conclude that a strict application of this policy is not warranted or would be inconsistent with the investigative and charging priorities of the Department. However, any decision to vary from the core principle of this policy must be approved by a United States Attorney or Assistant Attorney General, or a supervisor designated by the United States Attorney or Assistant Attorney General, and the reasons must be documented in the file.

## II. Plea Bargaining

Plea bargaining and plea agreements are governed by the same fundamental considerations that apply to step two of charging decisions. There is no room in plea bargaining for political animus or other hostility.

Prosecutors may not use criminal charges to exert leverage to induce a guilty plea. Nor may a prosecutor abandon pending charges to achieve a plea bargain that is inconsistent with the prosecutor's assessment of the seriousness of the defendant's conduct at the time the charges were filed. For example, absent significant mitigating or intervening circumstances, it will rarely be appropriate for a prosecutor to seek racketeering or terrorism charges at the outset of a case but abandon those charges in connection with a plea deal.

## III. Sentencing

As with other steps in the criminal justice process, sentencing requires complete candor with the court, the defendant, the probation office, and the public. Prosecutors must alert the court and the defendant to all known relevant facts and criminal history.

Prosecutors' sentencing recommendations must be based on an individualized assessment of the nature and circumstances of the offense and the history and characteristics of the defendant. Justice Manual § 9-27.730. In most cases, if charged appropriately based on the considerations set forth in Part II, a sentence within the applicable recommended range of the U.S. Sentencing Guidelines will also be consistent with the factors listed in Section 9-27.730 of the Justice Manual.

Memorandum for all Department Employees
Subject: General Policy Regarding Charging, Plea Negotiations, and Sentencing                                                                 Page 3

### IV. Investigative And Charging Priorities

The Nation faces historic threats from widespread illegal immigration, dangerous cartels, transnational organized crime, gangs, human trafficking and smuggling, fentanyl and opioids, violence against law enforcement, terrorism, hostile nation states, and other sources. This section describes the Department's priorities and guidance in addressing these threats, including by revising previous priorities to make additional resources available. Further detailed guidance regarding these priorities, and others, will follow.

<u>Immigration Enforcement</u>. The Department of Justice shall use all available criminal statutes to combat the flood of illegal immigration that took place over the last four years, and to continue to support the Department of Homeland Security's immigration and removal initiatives.

Consistent with the core principle of pursuing the most serious, readily provable offense, U.S. Attorney's Offices and the other Department components shall pursue charges relating to criminal immigration-related violations when such violations are presented by federal, state, or local law enforcement or the Intelligence Community. *See, e.g.*, 8 U.S.C. §§ 1324(c), 1252c (authorizing certain immigration-related arrests by state and local law enforcement officials); *see also* 18 U.S.C. § 3041. This includes, where supported by evidence, and consistent with applicable law, prosecutions for violations of 8 U.S.C. §§ 1304, 1306, 1324-1328, 1373 and 18 U.S.C. § 922(g)(5).

Federal law prohibits state and local actors from resisting, obstructing, and otherwise failing to comply with lawful immigration-related commands and requests. The U.S. Attorneys' Offices and other litigating components of the Department shall investigate incidents involving any such misconduct for potential prosecution, including for obstructing federal functions in violation of 18 U.S.C. § 371, and violations of other statutes, such as 8 U.S.C. §§ 1324, 1373.

Any declinations of immigration-related offenses shall be disclosed as Urgent Reports pursuant to Justice Manual § 1-13.130. On a quarterly basis, each U.S. Attorney's Office shall report statistics to EOUSA, broken down by law enforcement agency, regarding the number of immigration-related cases referred to the Office, the number of pending immigration-related investigations and prosecutions, the number of immigration-related convictions, and the resulting sentences and removals.

<u>Human Trafficking and Smuggling</u>. Illegal trafficking and smuggling of children and other humans are a horrific byproduct of illegal immigration. The Department of Justice must continue to respond forcefully to these crimes. Joint Task Force Alpha, which was created in partnership with the Department of Homeland Security to enhance enforcement efforts against human smuggling and trafficking groups in Central and South America, will be elevated to the Office of the Attorney General, while still coordinating with the Criminal and National Security Divisions. Personnel from the Joint Task Force will support investigations and prosecutions at U.S. Attorney's Offices around the country, and deploy to U.S. Attorneys' Offices on the southern border to focus resources in those critical Districts.

Memorandum for all Department Employees
Subject: General Policy Regarding Charging, Plea Negotiations, and Sentencing                                                   Page 4

<u>Transitional Organized Crime, Cartels, and Gangs</u>. President Trump has tasked the Department of Justice with an ambitious and historic mission: total elimination of Tren de Aragua (TdA), La Mara Salvatrucha (MS-13), and international drug cartels from the United States. The time is now. The U.S. Attorney's Offices and their federal law enforcement partners, supported by Main Justice, are up to this mission.

Joint Task Force Vulcan, an initiative launched in 2019 to destroy MS-13, which was wrongly deprioritized by prior Department leadership and improperly allowed to languish, will be reconstituted, expanded to address TdA in addition to MS-13, and reelevated to the Office of the Attorney General. I will issue further guidance regarding more specific measures to be taken by the Department to target TdA, MS-13, transnational organized crime, and international drug cartels.

<u>Protecting Law Enforcement Personnel</u>. One of the Department of Justice's top priorities is protecting law enforcement at the federal, state, and local levels who protect us all. This includes aggressively investigating the all-too-common instances of violence against and obstruction of law enforcement, seeking the death penalty for those who perpetrate capital crimes against law enforcement, and backing and promoting the efforts of law enforcement when they are subjected to unfair criticism or attack.

<u>Shifting Resources in the National Security Division</u>. To free resources to address more pressing priorities, and end risks of further weaponization and abuses of prosecutorial discretion, the Foreign Influence Task Force shall be disbanded. Recourse to criminal charges under the Foreign Agents Registration Act (FARA) and 18 U.S.C. § 951 shall be limited to instances of alleged conduct similar to more traditional espionage by foreign government actors. With respect to FARA and § 951, the Counterintelligence and Export Control Section, including the FARA Unit, shall focus on civil enforcement, regulatory initiatives, and public guidance.

The National Security Division's Corporate Enforcement Unit is also disbanded. Personnel assigned to the Unit shall return to their previous posts.

<u>Shifting ATF Resources</u>. To free resources to address more pressing priorities, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) shall shift resources from its Alcohol and Tobacco Enforcement Programs to focus on matters relating to the other priorities set forth herein. No resources shall be diverted from the ATF's regulatory responsibilities, such as federal firearms licenses and background checks.

\*     \*     \*

Any inconsistent previous policy of the Department of Justice relating to charging, plea negotiations, and sentencing is rescinded, effective today.[2]  Each U.S. Attorney and Assistant

---

[2] The previous policies and guidance rescinded include: "Guidance Regarding Charging, Pleas, and Sentencing in Cases Involving Crack Cocaine" (January 13, 2023); "General Department Policies Regarding Charging, Pleas, and Sentencing" (December 16, 2022); "Interim Guidance on Prosecutorial Discretion, Charging, and Sentencing" (January 29, 2021); "Department Policy on

Memorandum for all Department Employees
Subject: General Policy Regarding Charging, Plea Negotiations, and Sentencing                                     Page 5

Attorney General is responsible for ensuring that this policy is followed, and that deviations from the core principle are justified by unusual facts. The Deputy Attorney General will oversee implementation of this policy and issue any clarification and guidance deemed appropriate for its just and consistent application.

---

Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases" (August 12, 2013); and "Guidance Regarding § 851 Enhancements in Plea Negotiations" (September 24, 2014); Justice Manual §§ 9-27.310, 9-27.311, 9-27.400.