**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

STATE OF ILLINOIS, et al.,

        *Plaintiffs*,

   v.

FEDERAL EMERGENCY
MANAGEMENT AGENCY, et al.,

        *Defendants.*

No. 1:25-cv-206-WES-PAS

# EXHIBIT 42

Declaration of Dean Hoxsie

**DECLARATION OF DEAN HOXSIE**

I, Dean Hoxsie, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1.  I am over the age of eighteen and understand the obligations of an oath.

2.  I am a resident of the State of Rhode Island.

3.  I am currently employed by the Rhode Island Department of Environmental Management ("DEM") as the Chief for the Division of Law Enforcement ("DLE"). In that role, I am responsible for all operational and administrative functions of the DLE.

4.  I have personal knowledge of the facts stated herein or have knowledge of the matters based on my review of information and records gathered by my staff.

5.  Every year, hundreds of thousands of people visit Rhode Island's lakes, rivers, and beaches. In the summer, some DEM facilities may see 10,000 visitors in a single day. Many of them come with boats, jet skis, and other personal watercraft. To ensure everyone can enjoy the State's water resources safely and responsibly, the State requires most residents and non-residents to be certified in boating safety.

6.  The Rhode Island Department of Environmental Management serves as the chief steward of the state's natural resources and is responsible for protecting, restoring, and promoting the environment to ensure Rhode Island remains a highly desirable place to live, visit, and raise a family. As part of its responsibilities, DEM enforces the State's boating safety laws and regulations as well as provides programming and support to ensure Rhode Island waters are safely enjoyed by the public through its Division of Law Enforcement. R.I. Gen. Laws §§ 46-27-3; 46-22-9.8.

1

## **State Recreational Boating Safety Grant Program**

7. I am familiar with the State Recreational Boating Safety Grant Program ("RBS Program") administered by the U.S. Coast Guard. The purpose of the RBS Program is to provide funding to States to support boating safety education and law enforcement. States receive RBS funding for each fiscal year based on a statutory funding formula. RBS is a critical part of the Division of Law Enforcement's mission.

8. States and territories are eligible for RBS funding if they have a boating safety program meeting certain criteria and approved by the U.S. Coast Guard. Rhode Island has had an approved boating safety program since 1986.

9. RBS funding is available for facilities, equipment, and supplies; personnel training; education programming; public access sites used primarily by recreational boaters; boating safety inspections and marine casualty investigations; emergency and search and rescue capabilities; waterway markers and other navigational aids; and recreational vessel numbering and titling programs.

10. DEM has relied on RBS funding to pay for the salaries of officers entrusted with policing Rhode Island's waters; the boats, vehicles, and radios they use to patrol, apprehend violators, and assist in emergencies; the marine base out of which DLE operates; education and training, including attendance at two national meetings per year; and all operational expenses for the State's Coast-Guard-approved boating safety program, including the money for handbooks, test materials, and overtime for officers administering exams.

11. Typically, state agencies apply for RBS funding in the summer of the year preceding the award year. Funding is then allocated via the terms set out in 46 U.S.C. § 13104. Recipients generally receive notice in October that their applications were programmatically approved

2

and begin making expenditures, as budgeted in their applications, in expectation of being reimbursed by RBS funding. In a typical year, recipients will receive notice in late February or early March of their final RBS allocation along with the Coast Guard Terms and Conditions they must sign in order to access the funding for reimbursement.

12. On March 29, 2024, DEM received notice from Pavol Oborski, USCG Grants Management Branch Chief that the agency would be receiving an estimated $976,724 in RBS funds for Fiscal Year 2025.

13. On April 4, 2025, DEM received notice from Chief Oborski confirming that Rhode Island was allocated $1,077,219 in RBS funds for Fiscal Year 2025.

14. Since October 2024, DEM has spent RBS funding with the expectation that the expenses would be reimbursed through the RBS award. As of April 30, 2025, DLE has about $527,133 in outstanding reimbursements. DLE needed to spend that funding for the salaries and overtime of the officers who run the boating safety program. In addition, DLE has plans to spend its RBS award on necessary upgrades to the DLE marine base, including new security and structural maintenance; sending a team member to small engine repair school, allowing DLE to save on future repairs to its boats; and 2 replacement outboard motors needed in case of emergency.

**Harms to DEM from DHS Action**

15. DEM cannot access its RBS funding unless and until it signs the Financial Agreement for Fiscal Year 2025 agreeing to abide by the Coast Guard's Terms and Conditions. Those Terms and Conditions incorporate the most recent version of the Department of Homeland Security's Terms and Conditions by reference.

3

16. On March 27, 2025, the Department of Homeland Security (DHS) imposed new Terms and Conditions for recipients of DHS funding, including the RBS grant. Among the new conditions is a requirement for "Communication and Cooperation with the Department of Homeland Security and Immigration Officials," which demands that recipients comply with 8 U.S.C. §§ 1373 and 1644; comply with "other relevant laws related to immigration," including 8 U.S.C. §§ 1324(a)(1)(A); "honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer"; "provide access to detainees"; and "not leak or otherwise publicize the existence of an immigration enforcement operation." FY 2025 DHS Standard Terms and Conditions § IX.

17. On April 18, 2025, DHS posted another new version of its Standard Terms and Conditions applicable to new federal awards ratified in FFY 2025. The new terms preserved Section IX, as described above. They also added a clause in the "Anti-Discrimination" section requiring recipients to certify that "[t]hey do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration."

18. I have been advised by legal counsel that affirming compliance as required by DHS is in direct conflict with Rhode Island law and the United States Constitution pursuant to *Morales v. Chadbourne*.

19. Furthermore, the certification contains vague and open-ended terms and conditions such as compliance with "other relevant laws related to immigration" and honoring "requests for cooperation," which the agency cannot agree to abide by without a better idea of what the terms and conditions entail in practice.

20. Likewise, the certification requires DEM to certify that any of its programs would not "benefit[] illegal immigrants or incentivize[] illegal immigration." I have been advised by legal

4

counsel that countless individuals might "benefit" from numerous programs DEM administers, including but not limited to the boating safety program and safe access to the State's waterways. Even if DEM could track the many ways benefits flow through its programs, DEM has no way of knowing the immigration status of its beneficiaries.

21. As the Division of Law Enforcement for the Department of Environmental Management is unable to comply with the federal government's new funding conditions, the State would lose access to the RBS funding it was already awarded and be unable to fund the State's boating safety programming just as DEM prepares for the busiest time of year for watercraft recreation.

22. In sum, Rhode Island will be harmed by the conditions imposed by DHS on the above grants because the State will be forced to either decline the award and incur substantial financial and programmatic harms or comply with the unlawful and impractical conditions and incur substantial financial and administrative costs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th_day of May, 2025, in Providence, Rhode Island.

_____
Dean Hoxsie
Chief, Division of Law Enforcement
Department of Environmental Management