UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF ILLINOIS, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL EMERGENCY<br>MANAGEMENT AGENCY, et al.,<br><br>*Defendants*. | No. 1:25-cv-206-WES-PAS |

# EXHIBIT 50

Declaration of Oscar L. Perez

## DECLARATION OF OSCAR L. PEREZ

I, Oscar L. Perez, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I have personal knowledge of the facts stated herein or have knowledge of the matters based on my review of information and records gathered by my staff.

3. I am the Chief of Police for the Providence Police Department and have held this role since 2023. As Chief, I am responsible for all operational and administrative functions of the Providence Police Department.

4. I am a member of the International Association of Chiefs of Police, New England Association of Chiefs of Police, and the Rhode Island Police Chiefs Association, and am the vice chairperson for the Rhode Island Police Officers Commissioner on Standards and Training.

5. Before I was appointed Chief, I served for nearly 30 years in the Providence Police Department and received numerous commendations and letters of recognition for exemplary police work.

6. In addition, I hold both a Bachelor's Degree in the Administration of Justice from Roger Williams University and a Master's Degree in Criminal Justice from Boston University.

7. I submit this declaration in response to the Department of Homeland Security's new "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" requirements imposed by the FY 2025 DHS Standard Terms and Conditions.

8. As Chief, I oversee a Department of approximately 540 employees, including approximately 438 full-time officers. My Department is committed to protecting the safety and welfare of the approximately 190,000 residents of Providence, Rhode Island, an ethnically diverse

community with a substantial population of first-, second-, and third-generation immigrants from around the world.

9. Our main priority as law enforcement officers is to deter and solve crime and bring criminals to justice. Based on my training and experience, it is my opinion that access to information, including information from members of the public, is a fundamental component in preventing and solving crime. I also believe this to be a proposition with which any law enforcement professional would agree. Both quantity and quality of information matters. To solve and prevent criminal activity, we aim to obtain the most information, and the most accurate information, possible.

10. Based on my training and experience, it is my opinion that a critical tool for obtaining access to more information, and more accurate information, is building and maintaining trust among our community members, who would be a primary source of that information.

11. Over my 30-plus-year career with the Providence Police Department, I have seen the problems that arise when members of the public are afraid to cooperate with police either due to fear of retaliation from the offenders, or, in this case, fear of deportation. On many occasions, we received calls from people who either were alleged victims of crime or had information pertaining to a criminal investigation. However, out of fear of being contacted again by police- and potentially bringing attention from immigration authorities to themselves, family members, or neighbors, those reporting information will offer aliases and/or inaccurate address information, preventing officers/detectives from following up and hindering investigations. Sometimes, the informants are eventually identified, but often, they are not. Information that cannot be verified is of little use to criminal investigations, causing many such investigations to go unsolved, allowing offenders to continue their criminal activity, and emboldening

criminals throughout our community. This pervasive distrust of the police endangers members, relatives, and friends of our immigrant population because criminals learn that they are more likely to get away with crimes committed against such individuals.

12. To better protect all members of the community, Providence has implemented various initiatives to build community trust.

13. Providence's community trust policies and practices help my officers solve crimes. We need victims and witnesses to fully cooperate with the police if we are going to arrest, charge, and ultimately convict criminals. By assuaging concerns about deportation, witnesses and victims can finally step forward to assist investigations and criminal proceedings.

14. Because of our community trust efforts, Providence is safer than ever before. Since 2023, we have approved U-Visas for 195 victims of crime, thus assisting in our crime enforcement efforts and ensuring we are able to hold criminal defendants responsible.

15. Moreover, any claim that our community trust efforts undermine public safety is inaccurate. I have seen no indication that Providence has experienced increased criminal activity from immigrant members of our community because of our policies. Rather, I have observed less criminal activity involving immigrants as the victims and witnesses in that population are more likely to come forward.

16. The City of Providence and the Providence Police Department fully comply with all relevant provisions of state and federal law.

17. The City of Providence and the Providence Police Department does not inquire or assume the immigration status of any individuals with whom its agents come into contact.

18. It is estimated that Providence receives approximately $334,480.00 in Federal funds through various DHS grants. Currently, Federal funding directly supports numerous public safety

initiatives, including projects within the Providence Emergency Management Agency and the Providence Fire Department.

19. If Providence were forced to choose between that funding and its community trust efforts, my training and experience tells me that Providence would be less safe and prosperous, either because Providence would no longer be able to fund the aforementioned projects or else because the Department would lose the cooperation of victims and witnesses who can no longer be assured that they or their loved ones will not face deportation in return for their assistance.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of May, 2025, in Providence, Rhode Island.

_____
Oscar L. Perez
Chief of Police
City of Providence