UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ILLINOIS, *et al.*,<br><br>    Plaintiffs,<br><br>*v.*<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY, *et al.*,<br><br>    Defendants. | Civil Action No.<br>25-cv-206-WES-PAS |

### DECLARATION OF DAVID RICHARDSON

I, David E. Richardson, declare as follows:

1. I am the Senior Official Performing the Duties of the Administrator at the Federal Emergency Management Agency ("FEMA" or "agency"). FEMA is a component within the U.S. Department for Homeland Security ("DHS"). As the Senior Official Performing the Duties of the FEMA Administrator, I am the DHS official responsible for being the principal advisor to the President and Secretary of Homeland Security ("Secretary") for all matters related to emergency management in the United States. I am also vested with the authority to manage and administer the various grant programs assigned to FEMA directly by statute or through Secretary delegation. In these capacities, I am familiar with the grant programs administered by FEMA and the policies and procedures governing these programs.

2. My statements in this Declaration are based on my personal knowledge, on information provided to me in my official capacity; on reasonable inquiry; information obtained from various records, systems, databases, DHS/FEMA employees (including those in the Department's Office of Countering Weapons of Mass Destruction); information portals maintained and relied upon by DHS in the regular course of business; and on my evaluation of that information.

**The DHS Standard Terms & Conditions**

3. I have reviewed agency records concerning each DHS grant program that FEMA administers and that Plaintiffs' Amended Complaint (ECF 57) addresses. I also have reviewed

1

those same records concerning each version of the DHS Standard Terms & Conditions ("Terms") that Plaintiffs have identified in their filings in this case.

4. The federal government's fiscal year ("FY") runs from October 1 through September 30. DHS grants that have been issued or will issue during FY 2025, correspond to periods of performance that start at some point between October 1, 2024, and September 30, 2025. Grants will have different end dates depending on the specific grant program and the project-specific costs they support. The periods of performance for grants awarded before FY 2025 may also extend into FY 2025 (*e.g.*, a Homeland Security Grant Program grant awarded in FY 2022 has a period of performance that begins on September 1, 2022, and ends on August 31, 2025). The Terms do not apply to grants awarded before FY 2025.

5. The Terms cover a broad range of conditions that could potentially apply to awards under the numerous grant programs administered by DHS components. A particular condition in the Terms, however, may not apply to a particular recipient and/or a particular grant award, such as where the statute that a condition is implementing only applies to certain recipient types, the particular grant program does not implicate the condition, or the award agreement for a specific program expressly excludes or revises a condition.

6. The April Terms (ECF 57-3) include specific conditions requiring compliance with federal civil immigration law, cooperation with federal civil immigration enforcement, and certification that the grant applicant does and will not operate programs that benefit illegal immigrants or incentivize illegal immigration (Sections C.IX and C.XVII(2)(a)(iii), the "Immigration Conditions"). The Immigration Conditions do not apply to any grant awards that had already been made before March 27, 2025. DHS/FEMA have not terminated or taken any action on any of its grant programs due to the Immigration Conditions.

**The March 25 Memo**

7. On March 25, 2025, the Secretary signed a memorandum ("March 25 Memo") outlining which grant programs might apply the Immigration Conditions. The copy of the March 25 Memo attached to Plaintiffs' Amended Complaint as Ex. B (ECF 57-2) is accurate. The

March 25 Memo noted that DHS/FEMA's application of any the Immigration Conditions on grant program applications or funding would vary based on the structure, purpose, and statutory authority of each respective program.

8. The agency has made a final determination that Immigration Conditions do ***not*** apply to the grant programs listed below, and applicants for funding under these programs are not required to comply with Immigration Conditions in order to receive funding. This determination supersedes any language in the April Terms stating that the Immigration Conditions apply to these grant programs. The grant programs which are exempt from the Immigration Conditions are:

- Community Disaster Loans (CDL)
- Disaster Unemployment Assistance (DUA)
- Individual and Households Program (IHP)
- Fire Management Assistance Grants (FMAG)
- Hazard Mitigation Grant Program (HMGP)
- Hazard Mitigation Grant Program Post Fire (HMGP Post Fire)
- Public Assistance – Grants to State & Local
- Public Assistance – NGOs
- Urban Search and Rescue (US&R)
- Assistance to Firefighter Grants (AFG)
- Building Resilient Infrastructure and Communities (BRIC)
- Chemical Stockpile Emergency Preparedness Program (CSEPP)
- Community Assistance Program – State Support Services Element (CAP-SSSE)
- Cooperating Technical Partners (CTP)
- Emergency Management Baseline Assessments Grant (EMBAG)
- Emergency Operations Center (EOC)
- Fire Prevention and Safety (FP&S)
- Flood Mitigation Assistance (FMA)
- Flood Mitigation Assistance Swift Current (FMA Swift)
- Homeland Security Preparedness Technical Assistance Program (HSPTAP)
- Homeland Security National Training Program (HSNTP) – National Domestic Preparedness Consortium (NDPC)
- HSNTP – National Cybersecurity Preparedness Consortium
- National Dam Safety Program (NDSP)
- Rehabilitation of High Hazard Potential Dams Grant Program (HHPD)
- National Earthquake Hazards Reduction Program (NEHRP) and Multistate and National Earthquake Assistance (MSNEA) Grant Program
- National Earthquake Hazards Reduction Program – Individual State Earthquake Assistance (NEHRP-ISEA)

- National Fire Academy Training Assistance (NFATA)
- National Incident Management Systems (NIMS) / Emergency Management Assistance Compact Program (EMAC)
- National Urban Search and Rescue (US&R)
- Pre-Disaster Mitigation (PDM)
- Pre-Disaster Mitigation (PDM) Congressionally Directed Spending (CDS)/ Legislative Pre-Disaster Mitigation (LPDM)
- Safeguarding Tomorrow Revolving Loan Fund / Safeguarding Tomorrow through Ongoing Risk Mitigation Act (STORM)
- Staffing for Adequate Fire and Emergency Response (SAFER)
- State and Local Cybersecurity Grant Program (SLCGP)
- State Fire Training System Grants (SFT)
- Crisis Counseling Program (CCP)
- Disaster Case Management (DCM)
- Public Assistance – Non-Congregate Sheltering
- Emergency Food and Shelter Program (EFSP)
- Nonprofit Security Grant Program (NSGP)
- Nonprofit Security Grant Programs – National Security Supplemental (NSGP-NSS)

9. DHS has revised its language for FY 2025 FEMA-State Agreements ("FSAs") to include the following:

> **F. CONTROLLING AUTHORITIES.** This Agreement is subject to the following governing authorities:
>
> . . . .
>
> 3. The FY 2025 Department of Homeland Security Standard Terms and Conditions, v. 3 (Apr. 18, 2025), which are incorporated by reference into this Agreement with the exception Paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) and paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration). Paragraphs C.IX and C.XVII(2)(a)(iii) do not apply to any federal award covered by this Agreement. The FY 2025 Department of Homeland Security Terms and Conditions, v.3 (Apr. 18, 2025), are available at www.dhs.gov/publication/dhs-standard-terms-and-conditions.

10. To the extent that any FEMA-State Agreements ("FSAs") required for funding had included the Immigration Conditions when executed earlier this calendar year, FEMA has amended the language in the previously-executed FSAs to incorporate the language in Paragraph 9.

4

11.     To the extent any NOFOs are issued for any of the programs listed in Paragraph 8 for FY 2025, the NOFOs will clarify that the Immigration Conditions do not apply. To the extent any NOFOs were issued for any of the programs listed in Paragraph 8 earlier this calendar year with reference to the DHS Standard Terms and Conditions that include the Immigration Conditions, FEMA will include the following language in any award packages issued pursuant to those NOFOs:

> A recipient under this funding opportunity must comply with the FY 2025 Department of Homeland Security Standard Terms and Conditions, v. 3 (Apr. 18, 2025), with the exception Paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) and paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration). Paragraphs C.IX and C.XVII(2)(a)(iii) do not apply to any federal award under this funding opportunity. The FY 2025 Department of Homeland Security Standard Terms and Conditions, v. 3 (Apr. 18, 2025) are available at www.dhs.gov/publication/dhs-standard-terms-and-conditions.

12.     Since the issuance of the March 25 Memo, DHS has been continuing to analyze the remaining 12 identified programs to determine whether DHS should apply the Immigration Conditions and, if so, which ones. DHS has still not made a final decision regarding the application of the Immigration Conditions to those the 12 programs. The March 25 Memo remains predecisional concerning whether and how FEMA might apply the Immigration Conditions to those remaining 12 programs.

13.     In keeping with the March 25 Memo, DHS is analyzing whether the Immigration Conditions can be applied to the following grant programs in a way that is consistent with the specific statutes that apply to each grant program because the purpose of each grant program has a nexus to immigration activities, law enforcement, or national security, including preventing and responding to acts of terrorism and extremism, and DHS may tailor the Immigration Conditions to a specific grant program. Of the 12 grant programs for which the March 25 Memo includes predecisional analysis, Plaintiffs have identified the following 10 in their pleadings[1]:

---

[1] The two programs not identified in the Amended Complaint are: (a) the Shelter and Services Program, which FEMA announced it had redesigned as the Detention Support Grant Program;

5

- FEMA grant programs identified in Plaintiffs' original Complaint (ECF 1) and in their Amended Complaint (ECF 57):
  - Emergency Management Performance Grant (EMPG)
  - Homeland Security Grant Program – State Homeland Security Program (SHSP)
  - Homeland Security Grant Program – Urban Area Security Initiative (UASI)
  - Port Security Grant Program (PSGP)
  - Presidential Residence Protection Assistance (PRPA)
- FEMA grant programs identified and added to only Plaintiffs' Amended Complaint:
  - Homeland Security Grant Program – Operation Stonegarden
  - Homeland Security National Training Program – Continuing Training Grants - Competitive
  - Regional Catastrophic Preparedness Grant Program
  - Targeted Violence and Terrorism Prevention Grant Program
  - Transit Security Grant Program

**Countering Weapons of Mass Destruction**

14.  I also am the Assistant Secretary at the Office of Countering Weapons of Mass Destruction ("CWMD") at the U.S. Department for Homeland Security ("DHS"). As the Assistant Secretary, I am the DHS official responsible for leading the Department's efforts to prevent the use of weapons of mass destruction against the United States and its assets by, including but not limited to, developing and promoting the strategies, policies, and operational concepts for efficient execution of CWMD's programs; overseeing CWMD's current financial resources for operational and grant programs such as BioWatch and Securing the Cities; and ensuring the development of capabilities to detect and deter weapons of mass destruction terrorism. I am vested

---

and (b) the Case Management Pilot Program, for which FEMA has decided not to issue a Notice of Funding Opportunity for FY 2025.

with the authority to manage and administer the various grant programs assigned to CWMD directly by statute or through Secretary delegation. In these capacities, I am familiar with the grant programs administered by CWMD and the policies and procedures governing these programs.

15. Securing the Cities is a discretionary grant program authorized under 6 U.S.C § 596b to enhance the ability of the United States to detect and prevent terrorist attacks and other high-consequence events utilizing nuclear or other radiological materials that pose a high risk to homeland security in high-risk urban areas. The program's objectives include providing resources to enhance detection, analysis, communication, and coordination to better integrate state, local, tribal, and territorial assets into Federal operations.

16. Awards through Securing the Cities are awarded via cooperative agreements that are entered into at CWMD's discretion. Once a recipient enters into a cooperative agreement with CWMD, they are able to apply for funding through Notices of Funding Opportunities ("NOFOs") that become available. *See infra* ¶¶ 24-27.

17. BioWatch is a discretionary grant program authorized under 6 U.S.C. §§ 596(1), 592(a)(2), and 591 note that incorporates the chemical and biological responsibilities into CWMD's work to support state, local, territorial, and tribal first responders with airborne biological terror attack detection.

18. Awards through BioWatch are awarded via cooperative agreement that are entered into at CWMD's discretion. Once a recipient enters into a cooperative agreement with CWMD, they are able to apply for funding through NOFOs that become available.

19. CWMD has determined the Immigration Conditions will apply to new awards for BioWatch and Securing the Cities.

20. The purpose of the BioWatch and Securing the Cities programs is to protect communities from airborne biological and nuclear terror attacks. BioWatch assists state and local governments to build capabilities for detecting the presence of biological agents for prevention of their use in a terrorist attack or to assist in the response to such attack. The Securing the Cities

programs assists state and local governments, primarily law enforcement and other first responders, in building capabilities to detect the presence of unregulated radiological and nuclear materials to prevent their use in a terrorist or other deliberate attack.

21. Illegal immigration presents a national security and terrorism risk. The 9/11 Commission Report, for example, recognized that "the institutions charged with protecting our borders . . . did not understand how grave th[e] threat could be." 9/11 Commission Report at xvi. The Commission also specifically noted that there were, at that time, "9 million people . . . in the United States outside the legal immigration system." *Id.* at 390.

22. DHS, as an institution, is premised on the idea that counterterrorism and immigration enforcement are closely linked. That was the whole basis for moving the immigration components—previously housed in the Department of Justice—to DHS when it was created in the wake of 9/11. BioWatch and Securing the Cities protect communities from the risk that an individual immigrating illegally would seek to import or use biological agents or nuclear materials for the purpose of terrorism. The purposes of these programs could be undermined if the Department were to award funds to local governments that are violating federal statutes and policies designed to support immigration law enforcement to protect national security. In creating DHS, Congress expressly found that "[t]he Federal Government relies on State and local personnel to protect against terrorist attacks." 6 U.S.C. § 481 (b)(2).

23. This is particularly true as to information sharing. The 9/11 Commission expressly recognized failures in information sharing between law enforcement agencies as a cause of terrorist attacks. Its Report recognized "pervasive problems of managing and sharing information across a large and unwieldy government." 9/11 Commission Report at xvi. Similarly, in creating DHS, Congress expressly found that "State and local personnel have capabilities and opportunities to gather information on suspicious activities and terrorist threats not possessed by Federal agencies." 6 U.S.C. § 481 (b)(8).

**Notices of Funding Opportunities**

24. A NOFO establishes DHS's guidance concerning various aspects of a particular grant program for a specific fiscal year. Those aspects include the program's objectives, the amount of money appropriated by Congress for the program, how states can demonstrate their eligibility for funding and how they must apply for it, and the terms and conditions that apply to that program.

25. As noted expressly on DHS's website concerning the Terms (and since June 11, 2025), "Not all of DHS's Standard Terms and Conditions apply to every DHS grant program[ ]. DHS directs individuals to review the program's NOFO and/or FEMA-State Agreement to determine which Terms and Conditions apply to a particular grant." A true and accurate copy of that website (and the preceding, quoted language) appears as **Exhibit A** to my declaration.

26. For the FEMA grant programs where DHS has not yet made a determination as to whether the Immigration Conditions will apply, DHS/FEMA cannot award FY 2025 grants for a specific program until after DHS/FEMA issues a NOFO for the program. States are not required to acknowledge DHS's Terms until they apply under a NOFO. The Terms that apply to the grant are those in effect at the time the grant is awarded, not the Terms in effect when the NOFO is issued. FEMA has not issued any NOFOs for any of the programs identified in Plaintiffs' Amended Complaint for FY 2025 for which FEMA continues to assess whether any Immigration Conditions might (or might not) apply. If and / or when DHS/FEMA issues NOFOs for any one of those grant programs for FY 2025, those NOFOs will clarify whether the Immigration Conditions apply to that grant program.

27. CWMD has not issued any NOFOs for BioWatch or Securing the Cities. As discussed above, DHS/CWMD has determined that the Immigration Conditions will apply to new BioWatch and Securing the Cities awards in FY 2025. The FY 2025 NOFOs for the BioWatch and Securing the Cities programs will clarify that the Immigration Conditions apply and will provide information about applying these terms to those specific programs for potential applicants.

I, David E. Richardson, declare under penalty of perjury that the foregoing is true and correct.

Executed on July 23, 2025

_____
David E. Richardson
Senior Official Performing the Duties of the Administrator
Federal Emergency Management Agency

# Exhibit A



U.S. Department of Homeland Security

# DHS Standard Terms and Conditions

The applicable DHS Standard Terms and Conditions for grants, cooperative agreements, fixed amount awards, and other types of federal financial assistance are based on the fiscal year in which the financial assistance award was funded. Not all of DHS's Standard Terms and Conditions apply to every DHS grant programs. DHS directs individuals to review the program's NOFO and/or FEMA-State Agreement to determine which Terms and Conditions apply to a particular grant.

If FY 2025 funds were awarded on or after April 18, 2025 - please refer to Version 3, Dated 04-18-2025.

If FY 2025 funds were awarded between March 27, 2025, and April 18, 2025 - please refer to Version 2, Dated 03-27-2025.

If FY 2022 funds were awarded on or after May 16, 2022 – please refer to Version 3, Dated 05-16-2022.

If FY 2017 funds were awarded on or after March 20, 2017 – please refer to Version 7.1, Dated 03-20-2017.

| Attachment | Ext. | Size |
| --- | --- | --- |
| [FY 2025 DHS Terms and Conditions Version 3 Dated April 18, 2025](https://www.dhs.gov/sites/default/files/2025-04/2025_0418_fy2025_dhs_terms_and_conditions_version_3.pdf) | PDF | 230.48 KB |
| [FY 2025 DHS Terms and Conditions Version 2 Dated March 27, 2025](https://www.dhs.gov/sites/default/files/2025-03/2025_0327_fy2025_dhs_terms_and_conditions_version_2_0.pdf) | PDF | 240.83 KB |
| [FY 2025 DHS Terms and Conditions Dated October 22, 2024](https://www.dhs.gov/sites/default/files/2024-11/2024_1021_fy_2025_dhs_terms_and_conditions_dated_october_22_2024.pdf) | PDF | 144.1 KB |
| [FY 2024 DHS Terms and Conditions Version 3 Dated April 4 2024](https://www.dhs.gov/sites/default/files/2025-03/2024_0507_cfo_dhs_standard_terms_and_conditions_version_3_dated_april_4_2024.pdf) | PDF | 210.5 KB |
| [FY 2023 DHS Terms and Conditions Version 2 Dated November 29 2022](https://www.dhs.gov/sites/default/files/2023-01/FY%202023%20DHS%20Terms%20and%20Conditions%20Version%202%20Dated%20November%2029%202022.pdf) | PDF | 293.13 KB |
| [Fiscal Year 2022 DHS Standard Terms and Conditions Version 3 Dated May 16 2022](https://www.dhs.gov/sites/default/files/2022-06/Fiscal%20Year%202022%20DHS%20Terms%20and%20Conditions%20-%20Version%203%20Dated%2005-16-2022.pdf) | PDF | 124.39 KB |
| [Fiscal Year 2022 DHS Terms and Conditions Version 2](https://www.dhs.gov/sites/default/files/2022-01/fy_2022_dhs_terms_and_conditions_version_2_dated_jan_24_2022_508.pdf) | PDF | 166.84 KB |
| [Fiscal Year 2021 DHS Standard Terms and Conditions Version 11.4 Dated February 17, 2021](https://www.dhs.gov/sites/default/files/publications/fy_2021_dhs_standard_terms_and_conditions_version.pdf) | PDF | 279.65 KB |
| [Fiscal Year 2020 DHS Standard Terms and Conditions Version 10.1 Dated December 31, 2019](https://www.dhs.gov/sites/default/files/publications/fy20_dhs_standard_terms_and_conditions_v10.1_dated_12-31-2019.pdf) | PDF | 253.45 KB |
| [Fiscal Year 2019 DHS Standard Terms and Conditions Version 9.3 Dated September 19, 2019](https://www.dhs.gov/sites/default/files/publications/fy19_dhs_standard_terms_and_conditions_v9.3_9.19.19.pdf) | PDF | 304.51 KB |
| [Fiscal Year 2018 DHS Standard Terms and Conditions Version 8.1 Dated April 9, 2018](https://www.dhs.gov/sites/default/files/publications/Fiscal%20Year%202018%20DHS%20Standard%20Terms%20and%20Conditions%20Version%208.1%20-%20Dated%2004-09-2018.pdf) | PDF | 124.52 KB |
| [Fiscal Year 2017 DHS Standard Terms and Conditions Version 7.1 Dated March 20, 2017](https://www.dhs.gov/sites/default/files/publications/Fiscal%20Year%202017%20DHS%20Standard%20Terms%20and%20Conditions%20Version%207-1%20Dated%2003-20-17.pdf) | PDF | 121.62 KB |
| [Fiscal Year 2017 DHS Standard Terms and Conditions Version 7.0 Dated March 3, 2017](https://www.dhs.gov/sites/default/files/publications/Fiscal%20Year%202017%20DHS%20Standard%20Terms%20and%20Conditions%20Version%207-0%20Dated%2003-03-17.pdf) | PDF | 132.52 KB |

| Attachment | Ext. | Size |
|---|---|---|
| **Fiscal Year 2016 DHS Standard Terms and Conditions Version 6.0 Dated January 29, 2016** (https://www.dhs.gov/sites/default/files/publications/Fiscal%20Year%202016%20DHS%20Standard%20Terms%20and%20Conditions%20Version%206-0%20Dated%2001-29-2016_0.pdf) | PDF | 120.00 KB |

## Collections

ACQUISITIONS (/COLLECTIONS/ACQUISITIONS)

## Keywords

FUNDING (/KEYWORDS/FUNDING)

## Topics

HOMELAND SECURITY ENTERPRISE (/TOPICS/HOMELAND-SECURITY-ENTERPRISE)

Last Updated: 06/11/2025