UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> FEDERAL EMERGENCY MANAGEMENT AGENCY, *et al.*, <br><br> *Defendants*. | No. 1:25-cv-206-WES-PAS |

**PLAINTIFF STATES' MOTION TO ENFORCE JUDGMENT OR,
IN THE ALTERNATIVE, TO CLARIFY SCOPE OF THE INJUNCTION**

On September 24, 2025, the Court granted Plaintiffs States' Motion for Summary Judgment in this dispute over whether the Department of Homeland Security ("DHS") can require state and local grantees to promise that they will assist DHS in enforcing federal immigration law. ECF 71. This Court vacated and enjoined the "contested conditions," *id.* at 43–44, a term which the Court's opinion defined by quoting the immigration-related language that defendants placed in the DHS standard terms and conditions earlier this year, *id.* at 4–6.

In the week after the Court entered judgment, defendants copy-pasted the Contested Conditions into a new grant term, re-titled it "Compliance with Federal Immigration Law" (the "Immigration Compliance Article"), and included the term in all grant awards issued under several major preparedness programs administered by the Federal Emergency Management Agency ("FEMA"). Exhibit 2 is a redline comparison of the original Contested Conditions with the "new" Immigration Compliance Article. In a gesture at compliance with the judgment, defendants temporarily stayed the operation of this Immigration Compliance Article, but with a trigger clause that will cause it to snap into effect "immediately" "[i]f the injunction is stayed, vacated, or

extinguished." Plaintiff States are, as a result, still required to certify, as a condition of obtaining federal funds, that they will be in compliance with the Immigration Compliance Article immediately upon any interruption of the Court's injunction.

These actions are inconsistent with the Court's judgment. Pursuant to the Court's request for any post-judgment filing within 14 days, ECF 71 at 44–45, Plaintiff States ask the Court either to enforce the judgment entered on September 24, or in the alternative to clarify the injunction, to require defendants to strike this rebranded Immigration Compliance Article from all award documents issued to Plaintiff States and their instrumentalities and subdivisions.

## BACKGROUND

### A.    The Court's Judgment.

Defendants in this case had attempted to "requir[e] state and local recipients to certify that they will assist in enforcing federal immigration law" or "risk losing all DHS-administered federal funds." ECF 71 at 4. On cross-motions for summary judgment, the Court held that defendants' decision to impose the Contested Conditions was arbitrary and capricious because of the "combination of overbreadth, disregard for reliance interests, and failure to consider public safety and possible alternatives." *Id*. at 35. Furthermore, the Court held, the imposition of Contested Conditions violated the Spending Clause, because the conditions were (1) overbroad and unrelated to the underlying programs on which they were imposed, (2) coercive "economic dragooning" of funds intended for essential public safety responsibilities, and (3) ambiguous and thus depriving the States of the ability to make informed decisions. *Id*. at 39–41.

The Court therefore ordered that "the contested conditions [we]re vacated" under the Administrative Procedure Act. *Id*. at 43. The Court further held that "a permanent injunction enjoining Defendants from enforcing the contested conditions against Plaintiff States is also appropriate," *id*., and "enjoin[ed] Defendants from enforcing the contested conditions against

Plaintiff States," *id.* at 44. The Court expressly defined the term "contested conditions" by quoting the challenged language in the DHS standard terms. *Id.* at 4–6.

### B. Defendants' Final Decision To Apply Immigration Conditions To Many Preparedness Programs.

Defendants asserted during litigation that they had not made a final decision as to whether to impose immigration conditions on 13 grant programs that Plaintiff States identified in their pleadings. *See, e.g.*, ECF 61 at 7. Among those programs were a set of FEMA preparedness grants, including the following grant programs:

- Emergency Management Performance Grant (EMPG);
- Homeland Security Grant Program (HSGP), including the sub-programs:
    - State Homeland Security Program (SHSP);
    - Urban Area Security Initiative (UASI); and
    - Operation Stonegarden;
- Transit Security Grant Program (TSGP);
- Port Security Grant Program (PSGP); and
- Regional Catastrophic Preparedness Grant Program (RCPGP).

Congress annually appropriates over $1 billion to the States under these grant programs. Five days after the Court ruled that defendants could not impose immigration conditions on those programs, on September 29, 2025, FEMA prepared and presented a document to congressional staff announcing its intent to apply "an immigration term and condition" to the programs identified above (and some others). *See* Ex. 3 at 8. FEMA further explained:

> The immigration condition will not apply to any of the plaintiffs in *San Francisco v. Trump* or in *State of Illinois v. Federal Emergency Management Agency* while the injunction orders remain in effect. If the injunctions are stayed, vacated or extinguished, the "Compliance with Federal Immigration Law" Agreement Article will immediately become effective.

*Id*. at 9. "For the Urban Area Security Initiative sub-program," for instance, "non-compliant jurisdictions will not receive any funding." *Id.* at 10. This blanket ban on funding, contingent on immigration-cooperation conditions, is "subject to the Impact of Injunction Orders." *Id.*

### C. The Preparedness Program Award Letters.

Consistent with their stated intent to apply immigration conditions to several preparedness programs, defendants have sent award documents to Plaintiff States *with* the Contested Conditions included. For purposes of illustration, Plaintiffs use the HSGP award letter that California received on September 26, 2025, focusing on the State Homeland Security Program component. *See* Ex. 4.[1] But the preparedness awards are all substantially similar as to the manner in which they implement the Conditions and the Court's injunction.

In the HSGP award letter, the Contested Conditions first appear in Article 11, in a form that is word-for-word identical to their promulgation in the DHS standard terms and conditions. *Id.* at 21. Article 61, however, waives the Conditions' applicability wholesale: "Notwithstanding their inclusion in this award package, the following terms and Agreement Articles do not apply to this grant award: [the Contested Conditions]." *Id.* at 34. The net result is that, as Plaintiff States understand Article 61, it effectively deprives Article 11 of legal effect on a permanent basis, for the life of the grant.

But the HSGP award letter—and, again, the award letters for the other preparedness grant programs—goes further. It includes a *new* article (Article 60) titled "Compliance with Federal Immigration Law" (again, the "Immigration Compliance Article"). *Id*. at 33. The Immigration Compliance Article requires States to make the following certification:

2.  Certification

a.  The state, territorial or local recipient and subrecipients must certify under penalty of perjury pursuant to 28 U.S.C. § 1746, and using a form that is acceptable to the Department of Homeland Security, that they will comply

---

[1] At the same time, DHS slashed HSGP funding to California and many other Plaintiff States on September 26, 2025, obliging many Plaintiff States to bring a new action concerning that unreasoned and dramatic funding cut. *See Illinois v. Noem*, No. 25-cv-00495 (D.R.I.).

  with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials:

   i. They will comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with the Department of Homeland Security regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, state, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: (1) sending such information to, or requesting or receiving such information from, Federal immigration officials; (2) maintaining such information; or (3) exchanging such information with any other Federal, state, or local government entity.

   ii. They will comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes.

   iii. They will honor requests for cooperation, such as participating in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance.

   iv. They will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien.

   v. They will not leak or otherwise publicize the existence of an immigration enforcement operation.

 b. The state or territorial recipient must require a state, territorial, or local government subrecipient to make the certification above before providing them with any funding under the subaward.

3. <u>Materiality and Remedies for Noncompliance</u>

This term and condition is material to the Department of Homeland Security's decision to continue with this grant award and the Department of Homeland Security may take any remedy for noncompliance, including termination, if the

      state or territorial recipient or a local government subrecipient fails to comply with this term and condition.

*Id.* at 33–34 (formatting added). Above this "certification," the Article also prohibits recipients and subrecipients "from being designated by the Department of Homeland Security or the Department of Justice as a sanctuary jurisdiction." *Id.* at 33, ¶ 1. But it states that DHS simply defines a "sanctuary jurisdiction" as one that does not comply with the above certification. *Id.* at 33, ¶ 1(c).

      Exhibit 2 is a redline comparison of the original Contested Conditions with the text of the new Immigration Compliance Article's certification provision. The two are substantively identical. Defendants have reimposed, through identical language in preparedness program award letters, the Contested Conditions that this Court has already invalidated. *See* ECF 71 at 4–5.

      Defendants included a nearly identical "Compliance with Federal Immigration Law" article in all award letters under the HSGP, EMPG, RCPGP, TSGP, and PSGP preparedness programs. *See*, *i.e.*, Ex. 5 (Illinois EMPG) at 28; Ex. 6 (Colorado RCPGP) at 29; Ex. 7 (San Francisco TSGP) at 27; Ex. 8 (Washington PGSP) at 29.[2] The only variance appears to be that the EMPG version of the article applies only to "local government" subrecipients, meaning Plaintiff States' instrumentalities and subdivisions. *See* Ex. 5 at 28.

      Finally, the award letters include a provision that temporarily stays the effect of the Immigration Compliance Article while this Court's injunction remains in place. Article 63 in California's HSGP letter (the "Injunction Article") states that the Immigration Compliance article does not apply to the award while the *Illinois v. FEMA* injunction "remains in effect." Ex. 4 at 35. But, the Injunction Article continues, "[i]f the injunction is stayed, vacated, or extinguished, the

---

[2] Plaintiff States provide only one example award letter for each of the programs subject to the immigration compliance article, but all reviewed awards include identical language.

6

'[SHSP]: Compliance with Federal Immigration Law' Agreement Article will immediately become effective." *Id.* The effect of this provision is to require Plaintiff States to agree that the Immigration Compliance Article would immediately take effect if the injunction is stayed (even briefly, as in an "administrative" stay) or vacated. Defendants imposed an identical (limited) stay of the Immigration Compliance Article as to all award letters under the HSGP, EMPG, RCPGP, TSGP, and PSGP programs. *See, e.g.*, Ex. 5 at 29; Ex. 6 at 31; Ex. 7 at 28; Ex. 8 at 31.

Grantees have 60 days after the award issues to accept awards under the HSGP, EMPG, RCPGP, TSGP, and PSGP programs. These deadlines therefore fall between November 25 and November 28, 2025.

## ARGUMENT

In the week following entry of the Court's judgment, defendants issued awards to Plaintiff States that copy-pasted the vacated and enjoined language out of a section titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" and into a new section titled "Compliance with Federal Immigration Law." Other than the change in title, and a slightly different mechanism for incorporating the language into the awards, the operative text of the new Immigration Compliance Article is materially identical to the text of the vacated and enjoined Contested Conditions. *See* Ex. 2. This Court sought briefing within 14 days as to whether the existing injunction "falls short of complete relief." ECF 71 at 44–45. Defendants' latest actions have made clear that further relief is indeed needed to enforce the Court's judgment and afford complete relief. Whether construed as a motion to enforce the existing judgment, or as a motion to clarify the scope of the injunction, Plaintiff States seek further relief directing defendants to strike the Immigration Compliance Article from all awards issued to Plaintiff States and their instrumentalities and subdivisions. A proposed order is attached as Exhibit 1.

### A. The Immigration Compliance Article Has Deprived Plaintiff States of Complete Relief Under The Court's Injunction.

The Immigration Compliance Article reproduces verbatim the Contested Conditions enjoined by this Court, and defendants are demanding that Plaintiff States certify to it to receive federal funds. These actions deprive Plaintiff States of complete relief. This Court is empowered to enter "an injunction [that] will offer complete relief to the plaintiffs before the court." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (emphasis removed). "[E]quity has jurisdiction to afford complete relief," as "one of the basic functions of equity is to prevent a multiplicity of actions." *Angoff v. Goldfine*, 270 F.2d 185, 190–91 (1st Cir. 1959). Plaintiff States should not have to bring a new, duplicative suit, challenging the exact same language and imposed on the exact same preparedness grant programs.

First, there can be no dispute that the Immigration Compliance Article is substantively identical to the Contested Conditions. As discussed, *supra* pp. 4–6, the Immigration Compliance Article reproduces the Contested Conditions' text almost word-for-word; it simply places those conditions under a different rubric (as the definition of a "sanctuary" jurisdiction). Defendants could not argue with a straight face that there is any daylight between the new term and the old.

Second, defendants are asking Plaintiff States to certify to the Conditions, notwithstanding the existence of the Injunction Article. The Injunction Article does not waive the Immigration Compliance Article; it merely places it on temporary pause. To sign preparedness grant agreements—agreements that secure hundreds of millions of dollars in homeland-security and other funds—Plaintiff States must expressly *agree* that "[i]f the injunction is stayed, vacated or extinguished," then the Immigration Compliance Article "will immediately become effective." *E.g.*, Ex. 4 at 35.

Defendants, in other words, are still demanding that Plaintiff States certify to the Contested Conditions—they are simply demanding a *conditional* certification rather than an absolute one. Under the Injunction Article, Plaintiff States must still agree to be bound by the Contested Conditions; they must just agree to be bound by them at a later date, if a specific event occurs. A contractual term with a condition precedent like this is still an enforceable term. *See BG Grp. v. Argentina*, 572 U.S. 25, 35 (2014) ("[A] 'condition precedent' determines what must happen before 'a contractual duty arises' but does not 'make the *validity* of the contract depend on its happening.'") (emphasis in original) (quoting 13 *Williston on Contracts* § 38:4 (4th ed. 2013)); *see also* 8 *Corbin on Contracts* § 30.9 (2025). If Plaintiff States agree to the award notices as issued, they may accordingly lose the ability to later contest the applicability of the Conditions for any other reason (or even to decline to continue to participate in the relevant programs should the Conditions spring into effect). Defendants are asking Plaintiff States—here, today—to make a commitment that this Court's injunction protects Plaintiff States and their subdivisions from having to make.[3]

Third, and relatedly, the Immigration Compliance Article and Injunction Article, taken together, would impose a retroactive funding condition should the condition precedent ever be triggered. The federal government may not "surpris[e] participating States with post-acceptance or 'retroactive' conditions" on federal grants. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 25 (1981). Here, the Injunction Article's trigger clause creates precisely that problem: Plaintiffs are required to accept or decline hundreds of millions of dollars in federal funds without

---

[3] By contrast, Article 61 in California's HSGP award letter operates as a *permanent* exemption: It waives the applicability of Article 11 for the life of the grant, and does not require California to agree to that article. *See* Ex. 4 at 34. Plaintiff States thus do not challenge these HSGP articles (or their equivalents in other award letters) here.

9

knowing whether and when the trigger clause will ever take effect. Because the trigger clause's impact is impossible "to ascertain" at this time, *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006), it violates the Spending Clause, too. The Court's injunction should not be construed to allow defendants to impose an unconstitutional regime where Plaintiff States must affirmatively consent to a retroactive and uncertain condition to gain access to federal funds. Once again, that does not afford Plaintiff States "complete relief." *CASA*, 606 U.S. at 852.

      **B.    The Immigration Compliance Article Contravenes The Vacatur Ordered By This Court.**

Plaintiff States are also entitled to an order enforcing or clarifying the judgment for a second reason: The Immigration Compliance Article contravenes the vacatur ordered by the Court. In its opinion, the Court ordered the Contested Conditions vacated under the APA. *See* ECF 71 at 43. "[W]hen a court vacates agency action, it nullifies the action and removes its legal force." *Id.* at 41; *see also Matson Navigation Co. v. Dep't of Transp.*, 770 F. Supp. 3d 44, 68 (D.D.C. 2025) ("The unlawful agency action is treated as a nullity."); *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 85 (D.D.C. 2007) ("[T]he effect of the vacatur ... is to take the rule off the books and reinstate the prior regulatory regime.") (emphasis removed). Defendants' approach to the original Contested Conditions is arguably consistent with vacatur: Article 11 imposes the Contested Conditions, *e.g.*, Ex. 4 at 21; but those Conditions are fully and permanently excluded by later articles, *e.g.*, *id.* at 34. So the original Article 11 containing the Contested Conditions is rendered without "legal force" by Article 61 and its analogues.

The Immigration Compliance Article, by contrast, contravenes the vacatur remedy. Again, defendants reproduced the Contested Conditions into a "new" article; that article is merely paused, not rendered inoperative; and that pause runs only "to any of the plaintiffs subject to the injunction order." *E.g.*, *id.* at 35. Moving the same language into a different part of the document and staying

10

its application until some triggering event is not vacatur. After vacatur, the agency is "bound to deal with the problem afresh" if it wishes to act again and have a court consider its new reasons. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 201 (1947). The agency must "take[] *new* agency action." *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 21 (2020) (emphasis in original); *see also Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) (agency must give new reasons after vacatur). But defendants have again offered "no reason" for re-promulgating the Contested Conditions via the Immigration Compliance Article. *Regents*, 591 U.S. at 28. The Immigration Compliance Article is unlawful on that basis, but more fundamentally, it contravenes the vacatur ordered by this Court only two weeks ago.

    **C.    The Immigration Compliance Article Should Be Stricken From All Award Letters Issued To Plaintiff States Including Their Instrumentalities and Subdivisions.**

The Immigration Compliance Article violates the Court's judgment "enjoin[ing] Defendants from enforcing the contested conditions against Plaintiff States," ECF 71 at 44, and it contravenes the vacatur of the Contested Conditions, *id.* at 43. Plaintiff States are entitled to an order requiring Defendants to amend all award letters that have been issued to Plaintiff States and their instrumentalities and subdivisions to remove the Immigration Compliance Article. Doing so would simply amount to compliance with the Court's judgment. In the alternative, the Court could construe this filing as a motion to clarify the September 24 injunction pursuant to the Court's instruction to provide briefing on complete relief within 14 days. *See* ECF 71 at 44–45. Or, in the final alternative, the Court could construe this filing as a motion for supplemental findings based on defendants' post-judgment actions pursuant to Civil Rule 52(b), which provides that "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b); *see Perrier-Bilbo v. United States*, 954 F.3d 413, 435 (1st Cir. 2020) ("newly discovered

11

evidence" is one appropriate basis for "the court to correct or amend a judgment"). Regardless, defendants should be directed to amend the award letters by a date certain, no later than seven days after the Court issues its ruling on the parties' supplemental briefing.[4]

Finally, the order should also make clear that the September 24 injunction protects all Plaintiff States' instrumentalities and subdivisions. Plaintiff States have requested such relief since the start of this case. *See, e.g.*, ECF 1 at 73, ¶ c; ECF 58 at 52. Such relief is necessary to prevent defendants from coercing the States' local jurisdictions to comply with unlawful conditions that are contrary to the States' own decisionmaking in this area. Uncontroverted record evidence shows that defendants' unlawful actions harm political subdivisions, effectively pressuring them to comply with defendants' unlawful conditions in order to receive critical homeland security funding. *See, e.g.*, ECF 59-26 (Khayyat Decl.), ¶¶ 33, 39 (subdivisions and instrumentalities are subgrantees under the HSGP and EMPG programs); ECF 59-28 (Maulawin Decl.) (effects on the City of Chicago); ECF 21-15 (Buhse Decl.) (effects on the City and County of Denver); Ex. 7 (San Francisco TSGP award). In addition, equivalent relief for Plaintiff States' instrumentalities and subdivisions inheres in the Court's judgment because "[s]tate political subdivisions are 'merely … department[s] of the State.'" *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 362 (2009) (quoting *Trenton v. New Jersey,* 262 U.S. 182, 187 (1923)); *see City of S. Bend v. S. Bend Common Council*, 865 F.3d 889, 892 (7th Cir. 2017) ("[A]s far as the national government is concerned a state and all of its creatures is a unit."); *see also Printz v. United States*, 521 U.S. 898, 931 n.15 (1997) (holding that "municipalities" are in equal measure "protected by the Constitution's guarantees of federalism").

---

[4] As noted above, *supra* p. 7, Plaintiff States and their instrumentalities and subdivisions currently face deadlines between November 25 and 28 to accept the awards at issue.

## CONCLUSION

The Court should enter an order requiring defendants to strike from all awards issued to Plaintiff States and their instrumentalities and subdivisions the "Compliance with Federal Immigration Law" articles within seven days of the Court's ruling. A proposed order effecting this result is attached as Exhibit 1 to this filing.

October 8, 2025                                                      Respectfully submitted,

**ROB BONTA**                                                        **KWAME RAOUL**
  ATTORNEY GENERAL OF CALIFORNIA                              ATTORNEY GENERAL OF ILLINOIS

Michael L. Newman                                                    /s/ Alex Hemmer
  *Senior Assistant Attorney General*                         Alex Hemmer
Joel Marrero                                                           *Deputy Solicitor General*
James E. Stanley                                                     Christopher G. Wells
  *Supervising Deputy Attorneys General*                        *Chief of the Public Interest Division*
Luke Freedman                                                        Darren Kinkead
Newton Knowles                                                         *Public Interest Counsel*
Alexis Piazza                                                        R. Sam Horan
Deylin Thrift-Viveros                                                Michael M. Tresnowski
Delbert Tran                                                         R. Henry Weaver
  *Deputy Attorneys General*                                    *Assistant Attorneys General*
                                                                     Office of the Illinois Attorney General
/s/ Lee I. Sherman                                                   115 LaSalle Street
Lee I. Sherman                                                       Chicago, IL 60603
  *Deputy Attorney General*                                   (773) 590-7932
California Department of Justice                                     alex.hemmer@ilag.gov
300 South Spring Street, Suite 1702
Los Angeles, CA 90013                                                *Attorneys for the State of Illinois*
(213) 269-6000
lee.sherman@doj.ca.gov

*Attorneys for the State of California*

**MATTHEW J. PLATKIN**
  ATTORNEY GENERAL OF NEW JERSEY

/s/ Shankar Duraiswamy
Shankar Duraiswamy
  *Deputy Solicitor General*
Mayur P. Saxena
  *Assistant Attorney General*
Surinder K. Aggarwal
Anaiis Gonzalez
Christopher J. Ioannou
Olivia C. Mendes
Phoenix N. Meyers
Sarah Nealon
Daniel Resler
  *Deputy Attorneys General*
New Jersey Office of Attorney General
25 Market Street, PO Box 093
Trenton, NJ 08625-0093
(609) 376-2745
shankar.duraiswamy@law.njoag.gov

*Attorneys for the State of New Jersey*

**PETER F. NERONHA**
  ATTORNEY GENERAL OF RHODE ISLAND

/s/ Kathryn M. Sabatini
Kathryn M. Sabatini (R.I. Bar No. 8486)
  *Chief, Civil Division*
  *Special Assistant Attorney General*
Paul Meosky (RI Bar No. 10742)
  *Special Assistant Attorney General*
Rhode Island Attorney General's Office
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 1882
ksabatini@riag.ri.gov

*Attorneys for the State of Rhode Island*

**PHILIP J. WEISER**
  ATTORNEY GENERAL OF COLORADO

/s/ David Moskowitz
David Moskowitz
  *Deputy Solicitor General*
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov

*Attorneys for the State of Colorado*

**WILLIAM TONG**
  ATTORNEY GENERAL OF CONNECTICUT

/s/ Ashley Meskill
Ashley Meskill
  *Assistant Attorney General*
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5270
ashley.meskill@ct.gov

*Attorneys for the State of Connecticut*

**KATHLEEN JENNINGS**
  ATTORNEY GENERAL OF DELAWARE

/s/ Ian R. Liston
Ian R. Liston
  *Director of Impact Litigation*
Vanessa L. Kassab
  *Deputy Attorney General*
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

*Attorneys for the State of Delaware*


**ANNE E. LOPEZ**
  ATTORNEY GENERAL OF HAWAIʻI

/s/ Kalikoʻonālani D. Fernandes
David D. Day
  *Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes
  *Solicitor General*
Department of the Hawaiʻi Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawaiʻi*

**BRIAN L. SCHWALB**
  ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA

/s/ Mitchell P. Reich
Mitchell P. Reich
  *Senior Counsel to the Attorney General*
Office of the Attorney General for the District
  of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 279-1261
mitchell.reich@dc.gov

*Attorneys for the District of Columbia*


**AARON M. FREY**
  ATTORNEY GENERAL OF MAINE

/s/ Vivian A. Mikhail
Vivian A. Mikhail
  *Deputy Attorney General*
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
vivian.mikhail@maine.gov

*Attorneys for the State of Maine*

**ANTHONY G. BROWN**
  ATTORNEY GENERAL OF MARYLAND

/s/ James C. Luh
James C. Luh
  *Senior Assistant Attorney General*
Office of the Maryland Attorney General
200 Saint Paul Place
20th Floor
Baltimore, MD 21202
(410) 576-6411
jluh@oag.state.md.us

*Attorneys for the State of Maryland*

**ANDREA JOY CAMPBELL**
  ATTORNEY GENERAL OF MASSACHUSETTS

/s/ Hannah C. Vail
Katherine Dirks
  *Chief State Trial Counsel*
Hannah C. Vail
  *Assistant Attorney General*
Office of the Massachusetts Attorney General
1 Ashburton Place
Boston, MA 02108
(617) 963-2512
hannah.vail@mass.gov

*Attorneys for the Commonwealth of Massachusetts*

**DANA NESSEL**
  ATTORNEY GENERAL OF MICHIGAN

/s/ Neil Giovanatti
Neil Giovanatti
Adam de Bear
  *Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa Street
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

*Attorneys for the People of the State of Michigan*

**KEITH ELLISON**
  ATTORNEY GENERAL OF MINNESOTA

/s/ Brian S. Carter
Brian S. Carter
  *Special Counsel*
Minnesota Attorney General's Office
445 Minnesota Street
Suite 1400
St. Paul, MN 55101
(651) 757-1010
brian.carter@ag.state.mn.us

*Attorneys for the State of Minnesota*

**AARON D. FORD**
   ATTORNEY GENERAL OF NEVADA

/s/ Heidi Parry Stern
Heidi Parry Stern
   *Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
hstern@ag.nv.gov

*Attorneys for the State of Nevada*


**LETITIA JAMES**
   ATTORNEY GENERAL OF NEW YORK

/s/ Julie Dona
Julie Dona
   *Special Counsel*
Zoe Levine
   *Special Counsel for Immigrant Justice*
Rabia Muqaddam
   *Chief Counsel for Federal Initiatives*
28 Liberty Street
New York, NY 10005
(212) 416-8494
julie.dona@ag.ny.gov

*Attorneys for the State of New York*

**RAÚL TORREZ**
   ATTORNEY GENERAL OF NEW MEXICO

/s/ Steven Perfrement
Steven Perfrement
   *Senior Litigation Counsel*
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4060
sperfrement@nmdoj.gov

*Attorneys for the State of New Mexico*


**DAN RAYFIELD**
   ATTORNEY GENERAL OF OREGON

/s/ Thomas H. Castelli
Thomas H. Castelli
   *Senior Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
thomas.castelli@doj.oregon.gov

*Attorneys for the State of Oregon*

**CHARITY R. CLARK**
  ATTORNEY GENERAL OF VERMONT

/s/ Julio A. Thompson
Jonathan T. Rose
  *Solicitor General*
Julio A. Thompson
  *Co-Director, Civil Rights Unit*
Officer of the Vermont Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-5519
julio.thompson@vermont.gov

*Attorneys for the State of Vermont*


**JOSHUA L. KAUL**
  ATTORNEY GENERAL OF WISCONSIN

/s/ Frances Reynolds Colbert
Frances Reynolds Colbert
  *Assistant Attorney General*
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-9226
frances.colbert@wisdoj.gov

*Attorneys for the State of Wisconsin*

**NICHOLAS W. BROWN**
  ATTORNEY GENERAL OF WASHINGTON

/s/ Tyler Roberts
Tyler Roberts
Benjamin Seel
Cristina Sepe
Marsha Chien
  *Assistant Attorneys General*
Washington State Office of the Attorney
  General
800 Fifth Avenue
Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Tyler.Roberts@atg.wa.gov

*Attorneys for the State of Washington*