**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF ILLINOIS, *et al.*,<br>*Plaintiffs*,<br>v.<br>FEDERAL EMERGENCY MANAGEMENT AGENCY, *et al.*,<br>*Defendants*. | No. 1:25-cv-206-WES-PAS |

## PLAINTIFF STATES' SECOND MOTION TO ENFORCE

Last year, the Department of Homeland Security ("DHS") and the Federal Emergency Management Agency ("FEMA") imposed a series of conditions on federal fiscal year 2025 grants that required States to assist DHS in enforcing federal immigration law. Plaintiffs then brought this now-closed case to challenge the lawfulness of defendants' attempt to impose such conditions.[1] On September 24, 2025, this Court issued an opinion and final judgment holding that DHS and FEMA had acted arbitrarily and capriciously and had violated the Spending Clause in making that decision, ECF 71, 72, and on October 14, 2025, this Court permanently enjoined DHS and FEMA from imposing the relevant conditions or "any materially similar term requiring cooperation with federal immigration enforcement," in the future, ECF 75.

DHS and FEMA have now ignored that injunction and imposed immigration-cooperation conditions—many *identical* to those imposed in Fiscal Year 2025—on nine Fiscal Year 2026 grant programs. *See* Amended Complaint, *Illinois v. FEMA*, No. 26-cv-485 (D.R.I. filed Oct. 2, 2026)

[1] This case (*Illinois v. FEMA*, No. 25-cv-206) was originally assigned to Judge Smith. Plaintiff States respectfully submit that it is related to *Illinois v. FEMA*, No. 26-cv-485, which is pending before Judge McElroy. *See* L.R. Civ. 5(b)(1).

(ECF 44) (Ex. 1). These conditions once again place nearly $1 billion in counterterrorism and emergency management funds at risk in the Plaintiff States—the precise harm this Court sought to remedy in the first instance.

Such deliberate disregard for this Court's judgment and enforcement order requires prompt relief from this Court. Plaintiff States seek an order declaring that defendants' decision—and any other attempt to again condition FEMA funding on conditions materially similar to those vacated and enjoined in 2025—violates this Court's orders. The Court should enjoin defendants from enforcing the 2026 conditions and order them to reissue award notices without those conditions to the States that were plaintiffs in this litigation.

## BACKGROUND

### A. The Court's Judgment and Enforcement Order

Last year, as the Court's opinion explains, DHS and FEMA attempted to "requir[e] state and local recipients to certify that they will assist in enforcing federal immigration law" or "risk losing all DHS-administered federal funds." *Illinois v. FEMA*, 801 F. Supp. 3d 75, 82 (D.R.I. 2025). Specifically, DHS and FEMA imposed six specific conditions (called the "contested conditions" by the Court) on all grant programs administered by those agencies. *Id.* In an opinion issued on September 24, 2025, on cross-motions for summary judgment, the Court held that defendants' decision to impose the contested conditions was arbitrary and capricious because of the "combination of overbreadth, disregard for reliance interests, and failure to consider public safety and possible alternatives." *Id.* at 94. The Court also held that the imposition of the conditions violated the Spending Clause because the conditions were unrelated to the purposes of the funds at issue, unlawfully coercive, and fatally ambiguous. *Id.* at 94–96. The Court therefore vacated the contested conditions and entered a permanent injunction "enjoining Defendants from enforcing the contested conditions against Plaintiff States." *Id.* at 97.

Notwithstanding the Court's September 24 decision vacating the contested conditions and enjoining defendants from enforcing them against Plaintiff States, DHS and FEMA proceeded to include the contested conditions in multiple award documents. Plaintiff States accordingly asked the Court to enforce its order and specifically enjoin DHS and FEMA from including the conditions in Fiscal Year 2025 award letters. ECF 73. The Court agreed, issuing an order on October 14, 2025, enforcing its September judgment. ECF 75. The October 2025 order specified that "Defendants are permanently enjoined from enforcing against Plaintiff States and their instrumentalities and subdivisions" both the original "contested conditions" and "any materially similar term requiring cooperation with federal immigration enforcement as a condition on federal funds." *Id.* at 3 ¶ 3. Defendants appealed the Court's orders, but voluntarily dismissed their appeal on September 16, 2026, ECF 81, and the Court's orders remain in full effect.

### B. Defendants' Fiscal Year 2026 Conditions

Notwithstanding this Court's orders, DHS and FEMA have once more imposed conditions that would "requir[e] state and local recipients to certify that they will assist in enforcing federal immigration law" in order to obtain federal funds. *FEMA*, 801 F. Supp. 3d at 82. Indeed, many of the conditions DHS and FEMA have imposed are *identical* to the conditions that they also imposed last year.

In April 2026, DHS reissued its Standard Terms and Conditions document with terms that would govern Fiscal Year 2026 funding administered by DHS and FEMA. Ex. 2; *see also* Ex. 3 (Aug. 28, 2026 version). As amended, that document includes a term entitled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials." *Id.* at 5–7. The term includes seven specific conditions that generally require state recipients to assist DHS in enforcing federal immigration law. *Id.* These seven conditions are substantively identical to the "contested conditions"—referred to herein as the FY 2025 Immigration Conditions—that this

Court vacated and enjoined in 2025: Five of the seven are word-for-word identical, and two have been amended in minor ways. *See infra* pp. 7–11 (comparing the 2026 conditions to the 2025 conditions).

At the time it issued the 2026 Standard Terms and Conditions document, DHS stated that it was still "analyz[ing]" whether and to what extent "the conditions in this section w[ould] be applied to any grant program" and would "clarify in the grant documents whether and how the terms in this section apply." Ex. 2 at 5; Ex. 3 at 5. FEMA made that determination on September 18, 2026, in a document entitled Grant Programs Directorate Information Bulletin No. 582 (the "September 18 Directive"). *See* Ex. 4. That document explains that the immigration conditions would apply to the following programs, for any awards issued on or after August 28, 2026:

- Homeland Security Grant Program (State Homeland Security Program, Urban Area Security Initiative, and Operation Stonegarden)
- Emergency Management Performance Grant Program
- Transit Security Grant Program
- Port Security Grant Program
- Regional Catastrophic Preparedness Grant Program
- BioWatch
- Securing the Cities
- Homeland Security National Training Program – Continuing Training Grant – Competitive
- State Border Security Reinforcement Fund[2]

*Id.* at 2. The States that were plaintiffs in this litigation collectively have been awarded over $900 million in fiscal year 2026 funding pursuant to these programs.

The States received award notices pursuant to many of these programs beginning on September 24, 2026, and the notices incorporate the September 18 Directive. *E.g.*, Ex. 5 art. 56. One award notice—the notice for the Homeland Security Grant Program ("HSGP")—also imposes

[2] No plaintiff in this case, No. 25-cv-206, has applied for funding under the State Border Security Reinforcement Fund program. *See* 8 U.S.C. § 1716. Plaintiff States accordingly seek no relief as to that program through this motion.

an eighth immigration condition. That condition—entitled "Fusion Center Intelligence Support, Coordination, and Reporting Requirement" (the "Fusion Center Condition")—requires States to employ their state-owned fusion centers as tools of immigration enforcement. *See* Ex. 5 art. 63 (Illinois HSGP award letter); *see also* Ex. 6 (Fusion Center Condition reformatted for legibility). This condition requires, among other things, that fusion centers "maintain a permanent, formal seat for officials from U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations" and provide quarterly "[c]onfirmation that the lead agency for the fusion center is an active 287(g) partner." Ex. 6 at 1–2. Both these requirements entail state cooperation with civil immigration enforcement. Enforcement and Removal Operations is the arm of DHS "primarily devoted to civil immigration enforcement." Memorandum from John Morton, Assistant Sec'y, to All ICE Emps. 1 (June 9, 2010) (Ex. 7). The phrase "287(g) partner" refers to § 287(g) of the INA, 8 U.S.C. § 1357(g), which governs the circumstances under which States assist in the enforcement of immigration law under DHS's "direction and supervision," *id.* § 1357(g)(3). Collectively, Plaintiff States refer to these eight conditions—the seven in the Standard Terms and Conditions, plus the Fusion Center Condition—as the FY 2026 Immigration Conditions.

Although the September 18 Directive identifies certain judgments that defendants intend to obey in enforcing Fiscal Year 2026 grant terms and conditions, Ex. 4 at 6–8, the Directive does not include this case on that list. Plaintiff States thus immediately reached out to opposing counsel to ask whether FEMA intended to enforce the FY 2026 Immigration Conditions on their grants in contravention of this Court's judgment, and have repeatedly renewed that inquiry in the two weeks since the Directive was issued. In response to those inquiries, FEMA has repeatedly declined to communicate any exception from the FY 2026 Immigration Conditions with respect to this Court's orders.

## LEGAL STANDARD

"Federal courts are not reduced to issuing injunctions and hoping for compliance. Once issued, an injunction may be enforced." *R.I. State Council of Churches*, 158 F.4th 304, 314 (1st Cir. 2025) (quoting *Hutto v. Finney*, 437 U.S. 678, 690 (1978)) (alterations omitted); *Reich v. United States*, 239 F.2d 134, 138 (1st Cir. 1956) ("It is too well settled to require a lengthy citation of cases that an injunction, temporary or permanent, must be obeyed as long as it is in force and effect."). A court has "great discretion when deciding how to enforce violations of its own orders." *R.I. State Council of Churches*, 158 F.4th at 314 (quotation omitted).

## ARGUMENT

Plaintiff States respectfully request that the Court enforce the orders that it entered in 2025, enjoin FEMA from enforcing the FY 2026 Immigration Conditions as to Plaintiff States, and order FEMA to reissue award letters without the FY 2026 Immigration Conditions. These same States, alongside others, have separately brought suit to challenge a range of terms imposed by FEMA on Fiscal Year 2026 funding, including the FY 2026 Immigration Conditions. *See Illinois v. FEMA*, No. 26-cv-485 (D.R.I.).[3] As explained in the complaint and moving papers there, Plaintiff States are entitled to judgment on the FY 2026 Immigration Conditions, as well as the other challenged Conditions, on their own terms. But FEMA should not be permitted to serially reissue substantively identical immigration conditions year after year and force States to litigate each set of substantively identical terms on a blank slate. This Court entered an injunction last year *permanently* enjoining FEMA from enforcing the terms in question, and FEMA has disobeyed that injunction. The Court should enforce the injunction.

[3] Several States and state executives—including the Commonwealth of Virginia and the Governors of Kentucky and Pennsylvania—are plaintiffs in No. 26-cv-485 but were not plaintiffs in No. 25-cv-206. References to "Plaintiff States" in this motion refer only to the States that were plaintiffs in No. 25-cv-206.

## I. FEMA Violated The Court's Orders.

The Court "permanently enjoined" FEMA from "enforcing against Plaintiff States and their instrumentalities and subdivisions" both "the contested conditions" and "any materially similar term requiring cooperation with federal immigration enforcement as a condition on federal funds." ECF 75 at 3 ¶ 3. FEMA violated that injunction by promulgating the FY 2026 Immigration Conditions and applying them to Plaintiff States' awards.

### A. Five of the FY 2026 Immigration Conditions are identical to FY 2025 Immigration Conditions.

Five of the FY 2026 Immigration Conditions are identical to the "contested conditions" that the Court vacated and enjoined FEMA from enforcing as to Plaintiff States in September and October 2025. Those five conditions are as follows:

| | **FY 2025 Immigration Conditions (ECF 59-2 at 5–6)** | **FY 2026 Immigration Conditions (Ex. 3 at 5–7)** |
|---|---|---|
| **Information Sharing Condition** | They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any | They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any |

| | | |
|---|---|---|
| | other Federal, State, or local government entity. | other Federal, State, or local government entity; |
| **Compliance Condition** | They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes; | They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes |
| **Access Condition** | That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and | That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and |
| **Publicization Condition** | That they will not leak or otherwise publicize the existence of an immigration enforcement operation. | That they will not leak or otherwise publicize the existence of an immigration enforcement operation. |
| **Certification Condition** | The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award. | The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award. |

FEMA plainly violated the Court's order in repromulgating these five conditions verbatim and attaching them to Plaintiff States' awards. The Court ordered FEMA not to impose the same conditions on Plaintiff States' grants. ECF 75 at 3 ¶ 3. FEMA did so anyway, applying the exact

same language to the exact same programs. The Court should enforce the injunction as to these five conditions.

**B. The remaining three FY 2026 Immigration Conditions are "materially similar" to the FY 2025 Immigration Conditions.**

FEMA also violated the Court's order in promulgating the remaining three conditions and attaching them to Plaintiff States' awards. The Court permanently enjoined FEMA from enforcing not only the contested conditions, but also "any materially similar term requiring cooperation with federal immigration enforcement as a condition on federal funds." ECF 75 at 3. The remaining three FY 2026 Immigration Conditions are "materially similar" to the FY 2025 Immigration Conditions that the Court vacated and enjoined: two of the three are slight modifications of those conditions, and the third requires "cooperation with federal immigration enforcement," *id.*, in the same manner as the FY 2025 Conditions. The Court should enforce the injunction as to these three conditions, too.

**1. The Benefits Condition is materially similar to the equivalent FY 2025 condition.**

In 2025, FEMA required grant recipients to certify that "[t]hey do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration." ECF 59-2 at 7. FEMA has reimposed this condition, but added a single phrase on the end, requiring recipients to certify that they "do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration *by establishing or maintaining programs providing direct financial support or public benefits to illegal immigrants*." Ex. 3 at 6–7 (emphasis on new language added).

The FY 2026 Benefits Condition is materially similar to the equivalent FY 2025 condition. Both conditions require States to agree that they will not "operate any program that benefits illegal immigrants or incentivizes illegal immigration"—a term that, as the Court explained last year, is

"hopelessly vague" and entirely "unrelated to the underlying programs," which support homeland-security and other emergency-preparedness functions. *FEMA*, 801 F. Supp. 3d at 96. The addition of the italicized language above is not a "material" change: The term would still prohibit Plaintiff States from administering benefits programs in a way inconsistent with the current administration's policy preferences, and the term still does not "define what compliance entails," *id.*, including by defining the key term "public benefits." The Court should enforce its injunction as to this term.

**2. The Cooperation Condition is materially similar to the equivalent FY 2025 condition.**

The FY 2026 Cooperation Condition is also materially similar to the equivalent condition from fiscal year 2025. The conditions are as follows:

| | **FY 2025 Immigration Conditions (ECF 59-2 at 5–6)** | **FY 2026 Immigration Conditions (Ex. 3 at 6)** |
|---|---|---|
| **Cooperation Condition** | [T]hey will honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance. | They will honor requests for cooperation with immigration detainers, including requests for information regarding criminal history, expected release date, actual release date, detention location, nationality, residence, and employment; and requests for short-term detention of not more than 48 hours of an alien pursuant to a valid detainer to allow DHS to assume custody. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance. They will not prohibit voluntary cooperation with DHS under 8 U.S.C. § 1357(g). |

FEMA, in other words, has taken the FY 2025 Cooperation Condition and elaborated upon the kinds of cooperation that it wishes States to pledge to provide. But while the contours of the required "cooperation" may have shifted slightly, the fundamental requirement remains the same.

Defendants have "requir[ed] cooperation with federal immigration enforcement as a condition on federal funds." ECF 75 at 3. This Court specifically prohibited terms of this sort in October 2025, *id.*, and FEMA has ignored that prohibition. The changes are not "material," and the Court should accordingly enforce its injunction as to this term.

**3. The Fusion Center Condition is materially similar to the FY 2025 Cooperation Condition.**

Finally, the new Fusion Center Condition is likewise materially similar to the Cooperation Condition from FY 2025. As noted above, the Cooperation Condition required States to participate in "joint operations" and the "sharing of information" for immigration-enforcement purposes. ECF 59-2 at 4. That is what the Fusion Center Condition requires, too. First, the Condition requires "formal coordination" with the federal "Homeland Security Task Force[s]." Ex. 6 at 1. Those "task forces" were established by executive order with the express goal of enforcing immigration law. *See* Exec. Order No. 14159, *Protecting the American People Against Invasion* § 6(c), 90 Fed. Reg. 8443, 8444 (Jan. 20, 2025). Second, the Fusion Center Condition requires States to give a seat to a federal civil immigration enforcement employee within state facilities—facilities that exist for the sole purpose of sharing sensitive information about possible security threats. Third, the condition appears to require States to enter into 287(g) agreements with DHS—formal agreements that would permit state and local law enforcement officers to undertake immigration-enforcement functions. *Supra* p. 5. These are all specific examples of the kind of cooperation the Court's orders prohibit FEMA from requiring as a condition of obtaining federal funds. The Fusion Center Condition is accordingly "materially similar to" the Cooperation Condition, and FEMA's decision to promulgate it and attach it to Plaintiff States' grants violated the Court's injunction.

## II. The Court Should Enforce Its Orders.

The Court should enforce its judgment and permanent injunction. FEMA has violated a court order permanently enjoining it from applying immigration-enforcement conditions to federal grant funds, *supra* pp. 7–11, with the result that Plaintiff States are unable to accept hundreds of millions of dollars in federal homeland-security funding that Congress appropriated for their use. To be sure, Plaintiff States and others have, as noted, also sought a new judgment and permanent injunction against the FY 2026 Immigration Conditions in Case No. 26-cv-485, and are entitled to relief in that case, too. *See supra* p. 6 & n.3. But Plaintiff States need not "suffer injuries repeatedly in each ensuing year—and separately sue after each injury—to obtain relief from [defendants'] unlawful actions." *City of Chicago v. Barr*, 961 F.3d 882, 910 (7th Cir. 2020). And Plaintiff States face harm even while that litigation is ongoing: Illinois and New Jersey, for instance, will be unable to continue activities under the BioWatch program in their States, a program that funds surveillance for bioterrorist attacks. Ex. 8 (Kreipke Decl.), ¶¶ 5, 22; Ex. 9 (Paller Decl.), ¶ 15. Plaintiff States should not have to shutter critical programs while litigating the legality of grant terms that this Court has already held unlawful. The Court should direct defendants to comply with its permanent injunction without delay.

## CONCLUSION

Plaintiff States accordingly request that the Court:

1. Declare that defendants' actions in implementing the FY 2026 Immigration Conditions, including the September 18 Directive, violate the permanent injunction entered in this case;
2. Enjoin defendants from enforcing the FY 2026 Immigration Conditions against the Plaintiff States (including their subdivisions and instrumentalities); and

3. Require defendants to reissue award letters to Plaintiff States (including their subdivisions and instrumentalities) under the relevant grant programs without the FY 2026 Immigration Conditions.

October 7, 2026

Respectfully submitted,

**ROB BONTA**
ATTORNEY GENERAL OF CALIFORNIA

Michael L. Newman
*Senior Assistant Attorney General*
Lee I. Sherman
James E. Stanley
*Supervising Deputy Attorneys General*
Jesse Basbaum
Lisa C. Ehrlich
Deylin Thrift-Viveros
*Deputy Attorneys General*

/s/ Del Tran
Del Tran
*Deputy Attorney General*
California Department of Justice
455 Golden Gate Ave.
San Francisco, CA 94102
(415) 229-0110
delbert.tran@doj.ca.gov

*Attorneys for the State of California*

**KWAME RAOUL**
ATTORNEY GENERAL OF ILLINOIS

/s/ Alex Hemmer
Alex Hemmer
*Deputy Solicitor General*
R. Henry Weaver
*Public Interest Counsel*
Michael M. Tresnowski
*Assistant Attorney General*
Office of the Illinois Attorney General
115 LaSalle Street
Chicago, IL 60603
(773) 590-7932
alex.hemmer@ilag.gov

*Attorneys for the State of Illinois*

**JENNIFER L. DAVENPORT**
ATTORNEY GENERAL OF NEW JERSEY

/s/ Shankar Duraiswamy
Shankar Duraiswamy
*Deputy Solicitor General*
Mayur P. Saxena
*Assistant Attorney General*
Surinder K. Aggarwal
Anaiis Gonzalez
Phoenix N. Meyers
Sarah Nealon
Daniel Resler
*Deputy Attorneys General*
New Jersey Office of Attorney General
25 Market Street, PO Box 093
Trenton, NJ 08625-0093
(609) 376-2745
shankar.duraiswamy@law.njoag.gov

*Attorneys for the State of New Jersey*

**PETER F. NERONHA**
ATTORNEY GENERAL OF RHODE ISLAND

/s/ Kathryn M. Sabatini
Kathryn M. Sabatini (R.I. Bar No. 8486)
*Chief, Civil Division*
*Special Assistant Attorney General*
Paul Meosky (RI Bar No. 10742)
*Special Assistant Attorney General*
Rhode Island Attorney General's Office
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 1882
ksabatini@riag.ri.gov

*Attorneys for the State of Rhode Island*

**PHILIP J. WEISER**
ATTORNEY GENERAL OF COLORADO

/s/ David Moskowitz
David Moskowitz
*Deputy Solicitor General*
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov

*Attorneys for the State of Colorado*

**WILLIAM TONG**
ATTORNEY GENERAL OF CONNECTICUT

/s/ Ashley Meskill
Ashley Meskill
*Assistant Attorney General*
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5270
ashley.meskill@ct.gov

*Attorneys for the State of Connecticut*

**KATHLEEN JENNINGS**
ATTORNEY GENERAL OF DELAWARE

/s/ Ian R. Liston
Ian R. Liston
*Director of Impact Litigation*
Vanessa L. Kassab
*Deputy Attorney General*
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

*Attorneys for the State of Delaware*

**BRIAN L. SCHWALB**
ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA

/s/ Mitchell P. Reich
Mitchell P. Reich
*Senior Counsel to the Attorney General*
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 279-1261
mitchell.reich@dc.gov

*Attorneys for the District of Columbia*

**ANNE E. LOPEZ**
ATTORNEY GENERAL OF HAWAI‘I

/s/ Kaliko‘onālani D. Fernandes
Kaliko‘onālani D. Fernandes
*Solicitor General*
Department of the Hawai‘i Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawai‘i*

**AARON M. FREY**
ATTORNEY GENERAL OF MAINE

/s/ Vivian A. Mikhail
Vivian A. Mikhail
*Deputy Attorney General*
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
vivian.mikhail@maine.gov

*Attorneys for the State of Maine*

**ANTHONY G. BROWN**
ATTORNEY GENERAL OF MARYLAND

/s/ James C. Luh
James C. Luh
*Senior Assistant Attorney General*
Office of the Maryland Attorney General
200 Saint Paul Place
20th Floor
Baltimore, MD 21202
(410) 576-6411
jluh@oag.state.md.us

*Attorneys for the State of Maryland*

**ANDREA JOY CAMPBELL**
ATTORNEY GENERAL OF MASSACHUSETTS

/s/ Hannah C. Vail
Katherine Dirks
*Chief State Trial Counsel*
Hannah C. Vail
*Assistant Attorney General*
Office of the Massachusetts Attorney General
1 Ashburton Place
Boston, MA 02108
(617) 963-2512
hannah.vail@mass.gov

*Attorneys for the Commonwealth of Massachusetts*

**DANA NESSEL**
ATTORNEY GENERAL OF MICHIGAN

/s/ Neil Giovanatti
Neil Giovanatti
Adam de Bear
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa Street
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

*Attorneys for the People of the State of Michigan*

**KEITH ELLISON**
ATTORNEY GENERAL OF MINNESOTA

/s/ Brian S. Carter
Brian S. Carter
*Special Counsel*
Minnesota Attorney General's Office
445 Minnesota Street
Suite 1400
St. Paul, MN 55101
(651) 757-1010
brian.carter@ag.state.mn.us

*Attorneys for the State of Minnesota*

**AARON D. FORD**
ATTORNEY GENERAL OF NEVADA

/s/ Heidi Parry Stern
Heidi Parry Stern
*Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
hstern@ag.nv.gov

*Attorneys for the State of Nevada*

**RAÚL TORREZ**
ATTORNEY GENERAL OF NEW MEXICO

/s/ Mark Noferi
Mark Noferi
*Senior Litigation Counsel*
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 640-2891
mnoferi@nmdoj.gov

*Attorneys for the State of New Mexico*

**LETITIA JAMES**
ATTORNEY GENERAL OF NEW YORK

/s/ Julie Dona
Julie Dona
*Special Counsel*
Zoe Levine
*Special Counsel for Immigrant Justice*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
28 Liberty Street
New York, NY 10005
(212) 416-8494
julie.dona@ag.ny.gov

*Attorneys for the State of New York*

**DAN RAYFIELD**
ATTORNEY GENERAL OF OREGON

/s/ Thomas H. Castelli
Thomas H. Castelli
*Senior Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
thomas.castelli@doj.oregon.gov

*Attorneys for the State of Oregon*

**CHARITY R. CLARK**
ATTORNEY GENERAL OF VERMONT

/s/ Julio A. Thompson
Jonathan T. Rose
*Solicitor General*
Julio A. Thompson
*Co-Director, Civil Rights Unit*
Officer of the Vermont Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-5519
julio.thompson@vermont.gov

*Attorneys for the State of Vermont*

**NICHOLAS W. BROWN**
ATTORNEY GENERAL OF WASHINGTON

/s/ Tyler Roberts
Tyler Roberts
Benjamin Seel
Cristina Sepe
Marsha Chien
*Assistant Attorneys General*
Washington State Office of the Attorney General
800 Fifth Avenue
Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Tyler.Roberts@atg.wa.gov

*Attorneys for the State of Washington*

**JOSHUA L. KAUL**
ATTORNEY GENERAL OF WISCONSIN

/s/ Frances Reynolds Colbert
Frances Reynolds Colbert
*Assistant Attorney General*
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-9226
frances.colbert@wisdoj.gov

*Attorneys for the State of Wisconsin*