# Exhibit A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ILLINOIS, *et al.*,<br><br>Plaintiffs,<br><br>*v.*<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY, *et al.*,<br><br>Defendants. | Civil Action No.<br>26-CV-485-MSM-RLA<br><br>**CERTIFICATION OF ADMINISTRATIVE RECORD** |

I, Pamela S. Williams, declare as follows:

1. I am employed by the Federal Emergency Management Agency as the Deputy Assistant Administrator (Acting) for the Grant Programs Directorate. In this capacity, my responsibilities include managing and administering the various grant programs assigned to FEMA directly by statute or through delegation from the Secretary and Administrator for FEMA, including the Homeland Security Grant Program ("HSGP") and other grants in the preparedness and non-disaster suite of programs.
2. The statements in this Declaration are based on my personal knowledge; information provided to me in my official capacity; my reasonable inquiry; information obtained from relevant records, systems, databases, and DHS or FEMA personnel; and my evaluation of that information.
3. Based on the foregoing, the documents identified in the attached Index are part of the administrative record in *Illinois, et al. v. Federal Emergency Management Agency, et al.*, Case No. 1:26-cv-485.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed: October 8 2026

PAMELA S WILLIAMS

Digitally signed by PAMELA S WILLIAMS
Date: 2026.10.08 15:29:13 -04'00'

Pamela Williams
Deputy Assistant Administrator (Acting)
Grant Programs Directorate
Federal Emergency Management Agency

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

ILLINOIS, *et al.*,

Plaintiffs,

*v.*

FEDERAL EMERGENCY MANAGEMENT AGENCY, *et al.*,

Defendants.

Civil Action No.
26-CV-485-MSM-RLA

**INDEX FOR SUPPLEMENTAL ADMINISTRATIVE RECORD**

| No. | Document | Date | Description | Page count |
|---|---|---|---|---|
| 1 | Decision Memorandum, *Deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions and Program Specific Terms and Conditions for FEMA Resilience Grants* | May 11, 2026 | Approval request by FEMA to use FY 2026 deviations from DHS standard grant terms and a range of program-specific conditions for resilience grants, enabling timely awards while addressing litigation, grant-management requirements, and program compliance controls. | 19 |
| 2 | FEMA Memorandum for the Secretary, *Approval Requested – Key Decisions for Fiscal Year 2026 Preparedness Grant Programs (Part 1)* | May 28, 2026 | Request by FEMA for approval by the Secretary of key FY 2026 preparedness-grant decisions, including maintaining most FY 2025 priorities and requirements, strengthening election-security compliance measures, setting risk-based funding approaches, and restoring competitive awards for the Nonprofit Security Grant Program. | 2 |
| 3 | Decision Memorandum (September 9, 2026), *Deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions and FEMA Program Specific Information for Non-Disaster Grant Awards* | September 9, 2026 | FEMA decision memorandum requesting approval by Under Secretary for Management for additional deviations from the FY 2026 DHS Standard Terms and Conditions and FEMA program-specific terms and conditions for non-disaster grant awards, including adjustments driven by litigation, immigration-condition determinations, termination provisions, | 12 |

| | | | | |
|---|---|---|---|---|
| | | | foreign national vetting, fusion center requirements, pass-through rules, withholding provisions, and program-specific compliance or reporting requirements. | |
| 4 | Decision Memorandum, *Fiscal Year 2026 FEMA Non-Disaster Grant Programs Immigration Term and Condition Determinations* | September 11, 2026 | FEMA decision memorandum requesting Secretary-level approval to apply the FY 2026 DHS "Communication and Cooperation with DHS and Immigration Officials" grant term and condition to specified FEMA non-disaster grant programs with an immigration, law enforcement, border security, terrorism-prevention, or national security nexus. | 11 |
| 5 | FEMA Memorandum, *Further Reasoning Regarding Fiscal Year 2026 FEMA Non-Disaster Grant Program Term and Condition Determinations* | September 18, 2026 | FEMA Grant Programs Directorate memorandum providing additional rationale for applying the FY 2026 DHS "Communication and Cooperation with DHS and Immigration Officials" standard term and condition to specified FEMA non-disaster grant programs based on each program's connection to immigration enforcement, law enforcement coordination, terrorism prevention, border security, transportation or port security, and national security preparedness. | 12 |
| 6 | FEMA Memorandum, *Justification for Term Inclusion: FY 2026 Fusion Center Intelligence Support, Coordination, and Reporting Terms and Conditions within the Homeland Security Grant Program (HSGP) Awards* | October 8, 2026 | Request by FEMA to amend affected FY 2026 Homeland Security Grant Program awards to replace an incorrect draft Fusion Center Term with the approved version, requiring specified intelligence-support activities and quarterly reporting to strengthen accountability and align funded work with homeland security priorities. | 4 |

**U.S. Department of Homeland Security**
Washington, DC 20472

FEMA

May 11, 2026

**DECISION**

MEMORANDUM FOR THE SENIOR OFFICIAL PERFORMING THE DUTIES OF THE UNDER SECRETARY FOR MANAGEMENT

FROM: Robert J. Fenton ROBERT J FENTON Digitally signed by ROBERT J FENTON Date: 2026.05.12 13:38:25 -04'00'
Senior Official Performing the Duties of the Administrator

SUBJECT: **Deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions and Program Specific Terms and Conditions for FEMA Resilience Grants**

---

**Purpose:** Seeking approval for deviations from the Fiscal Year 2026 Department of Homeland Security (DHS) Standard Terms and Conditions and approval of program specific terms and conditions for the Federal Emergency Management Agency's (FEMA) Resilience grant programs. Pre-approval of these terms and conditions will ensure timely delivery of these critical grant programs.

**Background:** FEMA grant program Notices of Funding Opportunity and grant awards include several deviations from and additions to the DHS Standard Terms and Conditions, as necessitated by ongoing litigation, established grant management practices, and program-specific requirements. These awards will also include other program-specific terms and conditions for the same reasons. This memorandum provides a summary of modified and additional terms and conditions used in FEMA's Resilience grant program Notices of Funding Opportunity and awards. These are organized by (1) deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions, and (2) common FEMA additions to the standard terms and conditions.

**Signature Level Justification:** According to DHS policy in Section 6.2 of the DHS Financial Management Policy Manual, all deviations from the DHS Standard Terms and Conditions and additional program specific terms and conditions proposed by a DHS Component require DHS Under Secretary for Management approval. Component Notices of Funding Opportunity are already reviewed by DHS through the Financial Assistance Policy and Oversight approval process.

**Timeliness:** Requesting approval by May 15, 2026, to facilitate the development and approval of upcoming Notices of Funding Opportunity and grant awards.

**Recommendation:** FEMA requests approval to use the deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions and the program specific grant terms and conditions outlined in Attachments 2-3, as applicable.

Approve/date BENJAMINE C HUFFMAN Digitally signed by BENJAMINE C HUFFMAN Date: 2026.05.14 09:53:30 -04'00' Disapprove/date____________________________

Modify/date ___________________________ Needs discussion/date________________________

Attachments:
1. Background
2. Deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions for FEMA Resilience Grants
3. Program Specific Terms and Conditions for FEMA Resilience Grants

**Attachment 1: Background**

Chapter 6 of the DHS Financial Management Policy Manual provides policy on DHS Financial Assistance and establishes the processes and requirements for managing DHS financial assistance, to ensure compliance, transparency, and consistency across all program activities. According to Section 6.2 of the Financial Management Policy Manual, updated as of April 21, 2026, all DHS Component program deviations from the DHS Standard Terms and Conditions and additional program specific terms and conditions proposed by DHS Components must be approved by the DHS Under Secretary for Management.

FEMA's non-disaster grants use Notices of Funding Opportunity to establish program terms and conditions, whereas for disaster grants, the FEMA-State Agreement and State Administrative Plans delineate the standard terms and conditions for grants awarded under that disaster. For both disaster and non-disaster grants, FEMA may then add additional program or project-specific terms and conditions as appropriate.

In general, FEMA's Notices of Funding Opportunity and FEMA-State Agreements incorporate the current (as of their publication date) DHS Standard Terms and Conditions by reference. However, there are several DHS standard terms and conditions which may not be applied to FEMA grants pursuant to current litigation. These are summarized in Table 1 in Attachment 2. Attachment 3 summarizes additional terms and conditions used in Notices of Funding Opportunity and awards under FEMA Resilience grant programs.

**Attachment 2: Deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions**

In general, FEMA's Notices of Funding Opportunity and FEMA-State Agreements incorporate the current (as of their publication date) DHS Standard Terms and Conditions by reference. However, there are several DHS standard terms and conditions that may not be applied to FEMA grants pursuant to current litigation. These are summarized below in Table 1.

**Table 1: Summary of Deviations from the 2026 DHS Standard Terms and Conditions for FEMA Resilience Grants**

| DHS Standard Term and Condition | Description | Applicable Program(s) |
|---|---|---|
| Federal Anti-Discrimination Laws Material to the Government's Payment Decisions Under the False Claims Act | Term does not apply to grants awarded to plaintiffs covered by the following preliminary injunction orders:<br>• *County of Santa Clara et al. v. Noem, et al.*, No. 25-cv-08330-WHO (N.D. Cal.). Issued on November 21, 2025.<br>• *City of Chicago et al. v. Noem, et al.*, No. 25-CV-12765 (N.D. Ill.). Issued on November 21, 2025.<br>• *City of Seattle v. Trump, et al.,* No. 2:25-cv-01435-BJR (W.D. Wa.). Issued on October 31, 2025.<br><br>If the preliminary injunction is stayed, vacated or extinguished, the term will immediately become effective. Paragraph (2)(a)(ii) of the DHS Standard Term and Condition titled "Federal Anti-Discrimination Laws Material to the Government's Payment Decisions Under the False Claims Act" will not apply even if the preliminary injunction is stayed, vacated or extinguished.<br><br>Section (2)(a)(ii) of the term does not apply to grants awarded to plaintiffs covered by the following preliminary injunction orders:<br>• *State of Illinois, et al. v. FEMA, et al.*, No. 25-206 (D. R.I.) issued on October 14, 2025.<br>• *City and County of San Francisco, et al. v. Trump, et al., No. 3:25-cv-01350 (N.D. Cal.)* issued on August 22, 2025. | All |

| DHS Standard Term and Condition | Description | Applicable Program(s) |
|---|---|---|
| All Executive Orders Related to Grants | Term does not apply to plaintiffs covered by the following preliminary injunction orders:<br>• *County of Santa Clara et al. v. Noem, et al.*, No. 25-cv-08330-WHO (N.D. Cal.). Issued on November 21, 2025.<br>• *City of Chicago et al. v. Noem, et al.*, No. 25-CV-12765 (N.D. Ill.). Issues on November 21, 2025.<br><br>If the preliminary injunction is stayed, vacated or extinguished, the term will immediately become effective. Paragraph (2)(a)(ii) of the DHS Standard Term and Condition titled "Federal Anti-Discrimination Laws Material to the Government's Payment Decisions Under the False Claims Act" will not apply even if the preliminary injunction is stayed, vacated, or extinguished. | All |
| Termination of a Federal Award | FEMA will include a more comprehensive termination term and condition that addresses specific issues not addressed in the DHS Standard term as well as complies with Executive Order 14332, Improving Oversight of Federal Grantmaking. The EO requires a termination for convenience provision for "discretionary awards/grants", which is defined to not include "programs where legislation establishes an entitlement to the funds on the part of the recipient, such as block grants; those awarded based on a statutory formula; or disaster recovery grants." FEMA's provision takes into account that language of the EO and its applicability to certain programs. In addition, FEMA's termination provision addresses termination by pass-through entities of subawards, which is not in the DHS Standard Terms and Conditions. | All |

**Attachment 3: Program Specific Terms and Conditions for FEMA Resilience Grants**

Table 2 provides a summary of the types of program specific terms and conditions used in FEMA Resilience grant Notices of Funding Opportunity and awards. Some are broadly applicable, and some are specific to a grant program. Even if a term and condition is applicable to a program, FEMA may not necessarily include it in an individual award package or Notice of Funding Opportunity under that grant program. Additionally, it is possible that future Notices of Funding Opportunity and grant awards may include terms and conditions not noted in this memorandum. If so, those terms and conditions would be presented for USM review using the specified process.

**Table 2: Program Specific Terms and Conditions for FEMA Resilience Grants**

| Term and Condition Summary | Description | Applicable Program(s) |
|---|---|---|
| Environmental Planning and Historic Preservation Review | DHS/FEMA-funded activities that may impact the environment must undergo the FEMA Environmental Planning and Historic Preservation review process, which is required by laws such as the National Environmental Policy Act, Endangered Species Act, and National Historic Preservation Act. However, this review does not cover all federal, state and local requirements, so recipients must ensure compliance with all applicable laws and obtain necessary permits or risk losing federal funding.<br><br>Projects must consider potential impacts to natural and cultural resources, and if ground disturbance occurs during construction, applicants must monitor for archaeological resources and immediately halt work and notify authorities if any are discovered.<br><br>Actions affecting floodplains or wetlands require an eight-step review process, public notice, and evaluation of relocation options, as mandated by Executive Orders 11988 and 11990 and FEMA regulations at 44 C.F.R. Part 9. | All |

| **Term and Condition Summary** | **Description** | **Applicable Program(s)** |
|---|---|---|
| | Where relocation is not possible, FEMA must conduct a detailed review to identify measures to minimize future damages to floodplains or wetlands.<br><br>Individual grant awards may have specific requirements for Environmental Planning and Historic Preservation compliance—for example, a flood mitigation project that elevates a building in a historic area may have grant award terms and conditions related to architectural standards. Additionally, any changes to the approved scope of work will require re-evaluation for compliance with Environmental Planning and Historic Preservation requirements. | |
| Applicability of DHS Standard Terms and Conditions to Tribes | The DHS Standard Terms and Conditions are a restatement of general requirements imposed upon recipients and flow down to sub-recipients as a matter of law, regulation, or executive order. If the requirement does not apply to Indian Nations or there is a federal law or regulation exempting its application to Indian Nations, then the acceptance by Tribes of, or acquiescence to, DHS Standard Terms and Conditions does not change or alter its inapplicability to an Indian Nation. The execution of grant documents is not intended to change, alter, amend, or impose additional liability or responsibility upon the tribe where it does not already exist. | All |
| Financial Reporting Requirements | Specifies that recipients must report obligations and expenditures through a federal financial report (Standard Form 425), and stipulates the required reporting cadence. | All |
| Programmatic Performance Reporting Requirements | Specifies that recipients must submit programmatic performance reports and stipulates the required reporting cadence. | All |

| Term and Condition Summary | Description | Applicable Program(s) |
|---|---|---|
| Closeout Reporting Requirements | Specifies that recipients must submit their final request for payment, final federal financial report, final progress report, and any other needed documents within a certain timeframe after the end of the period of performance. | All |
| Compliance with 2 CFR Part 180 and 2 CFR Part 200 | Recipients and subrecipients must comply with applicable federal financial assistance and federal award requirements in 2 CFR Part 180 and 2 CFR Part 200. | All |
| Program Evaluation | Recipients and subrecipients are required to participate in a program office or DHS component-led evaluation if selected. | All |
| Acceptance of Post Award Changes | If FEMA identifies an error or needs to make an administrative change to an award package, FEMA will notify recipients in writing. After notification, any further requests for funds will be considered acceptance of the changes by the recipient. | All |
| Disposition of Equipment Acquired Under the Federal Award | For original or replacement equipment acquired under the award by non-state recipients or non-state subrecipients, when the equipment is no longer needed for the original project, program, or other federally supported activities, the recipient must request instructions from FEMA for proper disposition in accordance with 2 C.F.R. § 200.313. State recipients and state subrecipients are required to follow equipment disposition requirements as specified by state laws and procedures. | All |
| Prior Approval for Modification of Approved Budget | Before making any changes to the FEMA-approved budget for an award, recipients must obtain prior written approval from FEMA when required by 2 C.F.R. § 200.308. For non-construction projects, FEMA imposes an additional restriction under 2 C.F.R. § 200.308(f): for awards with a federal share greater than the simplified acquisition threshold (currently $250,000), recipients may not transfer | All |

| Term and Condition Summary | Description | Applicable Program(s) |
|---|---|---|
| | funds among direct cost categories, programs, functions or activities without prior written approval from FEMA if the cumulative amount of such transfers exceeds or is expected to exceed 10% of the total budget last approved by FEMA. For awards supporting both construction and non-construction work, FEMA requires recipients to obtain prior written approval before transferring funds or budgets between these two types of work, as permitted under 2 C.F.R. § 200.308(h)(5). Recipients must report any deviations from the FEMA-approved budget in the first Federal Financial Report (SF-425) submitted after the deviation, regardless of whether prior written approval was required. | |
| Indirect Cost Rate | 2 C.F.R. section 200.211(b)(15) requires the terms of the award to include the indirect cost rate for the federal award. If applicable, the indirect cost rate for the award is stated in the budget documents or other materials approved by FEMA and included in the award file. | All |
| Build America, Buy America Act (BABAA) Required Contract Provision & Self-Certification | In addition to the DHS Standard Terms & Conditions regarding Required Use of American Iron, Steel, Manufactured Products, and Construction Materials, recipients and subrecipients of FEMA financial assistance for programs that are subject to the Build America, Buy America Act must include a Buy America preference contract provision as noted in 2 C.F.R. § 184.4 and self-certification as required by FEMA policy. This requirement applies to all subawards, contracts, and purchase orders for work performed or products supplied under the FEMA award subject to Build America, Buy America Act. | All |

| Term and Condition Summary | Description | Applicable Program(s) |
|---|---|---|
| Executive Order 14305, Restoring American Airspace Sovereignty | In accordance with Executive Order 14305, Restoring American Airspace Sovereignty (June 6, 2025), and to the extent allowed by law, eligible state, local, Tribal Nation and territorial grant recipients are permitted to purchase unmanned aircraft systems, otherwise known as drones, or equipment or services for the detection, tracking, or identification of drones and drone signals, consistent with the legal authorities of state, local, Tribal Nation and territorial agencies. Recipients must comply with all applicable federal, state and local laws and regulations, and adhere to any statutory requirements on the use of federal funds for such unmanned aircraft systems, equipment or services. | All |
| Payment Information | Specifies that recipients must submit payment requests in FEMA GO. | Programs using FEMA GO as the grant management system |
| Instructions to Grant Recipients Pursuing Payments | FEMA is instituting additional reviews on all grant payments and obligations to ensure allowability in accordance with 2 C.F.R. § 200.305. These measures will ensure funds are disbursed appropriately while continuing to support and prioritize communities who rely on FEMA for assistance. If FEMA disapproves a payment, FEMA will inform the recipient. | All |
| Processing and Payment Timeline | FEMA must comply with regulations governing payments to grant recipients per 2 C.F.R. § 200.305. For grant recipients other than States, 2 C.F.R. § 200.305(b)(3) stipulates that FEMA is to make payments on a reimbursement basis within 30 days after receipt of the payment request, unless FEMA reasonably believes the request to be improper. | All |

| **Term and Condition Summary** | **Description** | **Applicable Program(s)** |
|---|---|---|
| | If additional information is needed, a request for information will be issued by FEMA to the recipient; recipients are strongly encouraged to respond to any additional FEMA request for information inquiries within three business days. If an adequate response is not received, the request may be denied, and the entity may need to submit a new reimbursement request; this will re-start the 30-day timeline. | |
| Submission Process | All reimbursement requests must be reviewed and approved by FEMA before drawdowns. | All |
| Summary Description of Award | Provides a description of the program intent and award amount. | All |
| Summary Description of Award and Subprograms | Provides a description of the program intent and award amount. For awards that contain more than one subprogram (State Homeland Security Grant Program, Urban Area Security Initiative, and/or Operation Stonegarden) the summary must note the award amounts for each subprogram. For awards with Operation Stonegarden, the summary must also note the counties receiving Operation Stonegarden subawards. | Homeland Security Grant Program |
| Amended Summary Description of Award | If the recipient requests a reallocation of grant funds, FEMA must approve. This term and condition then amends the award description. | All |
| Approved Scope of Work | Summarizes the approved project scope of work. | All |
| Period of Performance | Specifies the grant period of performance. | All |
| Period of Performance Extensions | Specifies the conditions under which the recipient may request a period of performance extension, and what information they must submit with their request. | All |

| Term and Condition Summary | Description | Applicable Program(s) |
|---|---|---|
| Identified Compliance Considerations | Summarizes potential issues that FEMA has identified that may arise during program implementation. | All |
| Request for Information | FEMA may request additional information from the applicant through a formal process in order to evaluate competitive grant applications. | All |
| Funding Hold: Additional Information Required | FEMA may place funding holds on awards until the recipient provides a detailed cost breakdown and justification for the investments/projects. FEMA will rescind the funding hold upon its review and approval of the detailed cost breakdown and justification. | All |
| Funding Hold: Management and Administration | FEMA may place funding holds on awards until the recipient provides a detailed cost breakdown and justification for the management and administration costs. FEMA will rescind the funding hold upon its review and approval of the detailed cost breakdown and justification. | All |
| Funding Hold: Grant Writer Fees | FEMA may place funding holds on awards with grant writer fees in the budget. For non-state recipients and subrecipients, unless a single contract covering both pre- and post-award services was awarded to the grant writer and procured in compliance with federal procurement standards, the recipient cannot use federal funds or funds applied to the award cost share to hire the grant writer for post-award services.<br><br>To release the funding hold, the recipient must provide documentation demonstrating eligibility of these costs. FEMA will rescind the funding hold upon its review and approval of this documentation. | All |
| Funding Hold: Indirect Cost Rate | FEMA may place funding holds on awards with indirect costs in the budget. | All |

| Term and Condition Summary | Description | Applicable Program(s) |
|---|---|---|
| | To release the funding hold, the recipient must provide a fully executed indirect cost rate agreement negotiated between the recipient and its cognizant federal agency or a proposal. If the recipient does not have a current indirect cost agreement or proposal, or if the recipient wants to charge the de minimis rate or use a cost allocation plan, the recipient must contact the relevant Program Analyst or Preparedness Officer or Grants Management Specialist for further instructions. | |
| Funding Hold: Debt Subject to Offset | FEMA may place funding holds on awards for recipients with “debt subject to offset” indicated in the System for Award Management.<br><br>To release the funding hold, the recipient must provide proof that the delinquent debt has been satisfied/remedied and identified as satisfied/remedied in the System for Award Management or provide documentation demonstrating that a payment plan has been established with the debt-collecting agency. | All |
| Funding Hold: Active SAM Registration at Time of Award | FEMA may place funding holds on awards if recipients lack a unique entity identifier or are not registered in the System for Award Management (SAM). Recipients must obtain the identifier and complete SAM registration within 30 days of the award.<br><br>The hold will be lifted once FEMA confirms the recipient has completed these requirements. Recipients must maintain active SAM registration throughout the application and award period. | All |

PRE-DECISIONAL/DELIBERATIVE

| Term and Condition Summary | Description | Applicable Program(s) |
|---|---|---|
| Funding Hold: Active SAM Registration During Period of Performance | FEMA may place a funding hold if a recipient's SAM registration expires during the award period. To lift the hold, the recipient must renew their SAM registration and provide proof to FEMA. Active SAM registration is required throughout the award's period of performance. | All |
| Funding Hold: Delinquent or Insufficient Reporting | FEMA may place funding holds on awards for recipients not in compliance with reporting requirements. The hold will be lifted once FEMA confirms the recipient has complied. | All |
| Funding Hold: Noncompliance Under Award | FEMA may place funding holds on awards for recipients not in compliance with award conditions. The hold will be lifted once FEMA confirms the recipient has complied. | All |
| Funding Hold: History of Noncompliance | FEMA may place funding holds on awards for recipients with a documented history of being noncompliant with statutory, regulatory or policy requirements of previously issued award(s). To release the funding hold, the recipient must work with the program office to demonstrate an understanding of the applicable statutory, regulatory or policy grant requirements and describe the actions being taken to reduce the risk of future noncompliance. | All |
| Closeout Reporting Period | Specifies the deadline for which the recipient must submit all final financial, performance, and other reports required by the terms and conditions of the award. | All |
| Liquidation Period | Specifies the deadline for which the recipient must liquidate all obligations incurred under the award. | All |
| Liquidation and Closeout Reporting Extensions | Specifies the revised liquidation period expiration date, as well as the revised closeout reporting period expiration date. Because final liquidation at the prime award level must occur before accurate closeout reporting can be submitted, FEMA views liquidation extension requests as inherently | All |

PRE-DECISIONAL/DELIBERATIVE

| Term and Condition Summary | Description | Applicable Program(s) |
|---|---|---|
| | also including simultaneous closeout reporting extension requests. | |
| Closeout Reporting Extension Only | Specifies the revised closeout reporting period expiration date. | All |
| Required Training or Technical Assistance | FEMA may require a recipient to obtain or attend training, technical assistance, or both regarding grants management or other specific topic(s). | All |
| Funding Hold: Environmental and Historic Preservation Compliance | FEMA may place a funding hold if the award includes work that requires an Environmental and Historic Preservation compliance review. To release the hold, the recipient is required to obtain the required FEMA EHP compliance approval for the project. | All |
| Funding Hold: Delinquent or Insufficient Performance or Other Reporting | FEMA may place a funding hold if the recipient is not in compliance with reporting requirements under the award. The hold will be lifted once FEMA confirms the recipient has complied with grant requirements. | All |
| Funding Hold: Equipment Prior Approval | FEMA may require recipients to request approval to purchase equipment such as boats, planes, UAS, or wildfire fighting equipment prior to receiving funding. To release the funding hold, the recipient must submit a request for the equipment and FEMA must approve. | All |
| Funding Hold: Authorized Organization Representative or Signatory Authority is Not Unique to the Recipient | FEMA may place a funding hold if the Authorized Organization Representative (AOR) or Signatory Authority (SA) email is not unique to the recipient or is associated with a consultant or contractor. To lift the hold, the recipient must update the AOR or SA information in FEMA GO to reflect a current, authorized employee or official. The hold is removed once FEMA confirms the update. | All |

| Term and Condition Summary | Description | Applicable Program(s) |
|---|---|---|
| Publication Acknowledgement of FEMA Grant Support | Recipients may be required to acknowledge FEMA grant funding support in any publications arising from the grant. | All |
| Program Performance Goals | FEMA may require recipients to provide information and/or data to report on program performance goals and targets. | All |
| Quarterly Calls | FEMA may require the grant recipient to participate in quarterly conference calls to evaluate the progress of open and active grant awards. | All |
| Compliance with Program Guidance | Recipients and subrecipients are required to be in compliance with applicable program guidance. For example, Hazard Mitigation Assistance recipients and subrecipients are required to have approved hazard mitigation plans. | All |
| Program Administration by States | If the state requests and FEMA approves the state's request for inclusion in the Program Administration by States program, FEMA and the state will execute an Operating Agreement that will be included in the HMGP Programmatic Addendum in the FEMA-State Agreement. | Hazard Mitigation Grant Program |
| Funding Hold: Signed FEMA-State Agreement or FEMA-Tribal Agreement | Grant awards may not be processed until the recipient provides the signed FEMA-State Agreement or FEMA-Tribal Agreement. | Hazard Mitigation Grant Program |
| Funding Hold: Approved Administrative Plan | Grant awards may not be processed until the recipient provides the approved Hazard Mitigation Grant Program administrative plan. | Hazard Mitigation Grant Program |
| Operations Order or Fragmentary Order (FRAGO) Review | The recipient is prohibited from drawing down funding or reimbursing subrecipients until each unique, specific or modified county level, tribal or equivalent Operations Order or Fragmentary Order has been reviewed by FEMA and Customs and Border Protection/United States Border Patrol. | Homeland Security Grant Program – Operation Stonegarden |

| **Term and Condition Summary** | **Description** | **Applicable Program(s)** |
|---|---|---|
| | The recipient will receive the official notification of approval from FEMA. | |
| Funding Hold: National Priority Areas | FEMA may place a funding hold on the investments for failure to demonstrate implementation of the national priority areas or failure to meet the required spending minimum for the national priority areas. Until the hold is released, the recipient is prohibited from drawing down funds or reimbursing subrecipients, and the subrecipients are prohibited from obligating or expending funds for the identified costs or activities. | Homeland Security Grant Program – State Homeland Security Grant Program and Urban Area Security Initiative |
| Funding Hold: Law Enforcement Terrorism and Prevention Activities Investments/Projects | FEMA may place a funding hold related to the implementation of allowable activities for the Law Enforcement Terrorism and Prevention Activities (LETPA) requirement. To release this hold, the recipient must submit additional information on LETPA investments/projects. | Homeland Security Grant Program |
| Funding Hold: Operational Packages | If the recipient requests Operational Packages and did not submit their five-year plan as part of the application, FEMA will place a funding hold on the award. To lift the funding hold, the recipient must submit its Five-Year Security Capital and Operational Sustainment Plan. | Intercity Passenger Rail, Transit Security Grant Program |
| Emergency Management Performance Grant Work Plan | The Emergency Management Performance Grant Work Plan as submitted by the recipient and approved by the Region is incorporated into the terms and conditions of the award. | Emergency Management Performance Grant |
| Requests for Reimbursement | Stipulates that the grant recipient may only receive payments from FEMA as reimbursements. Requests for reimbursement should be timely and coincide with normal billing patterns, but not less than one submission every month, based on the grant award's period of performance. Each request must be limited to the amount of the | Assistance to Firefighters Grant Program, Fire Prevention & Safety, and Staffing for Adequate Fire and Emergency Response |

| Term and Condition Summary | Description | Applicable Program(s) |
|---|---|---|
| | recipient's obligations incurred for eligible expenses during that time frame. | |
| Staffing for Adequate Fire and Emergency Response Operational Position – Primary Assignment | Stipulates that grant funds will only pay for operational positions whose primary assignment is on a fire suppression vehicle, regardless of collateral duties. | Staffing for Adequate Fire and Emergency Response |
| Documentation of Costs Prior to Reimbursement | Stipulates that all costs incurred by the grant recipient for procurement actions and the payment of salaries and benefits will require the submission of proper documentation to FEMA before costs are reimbursed. Proper documentation will show costs incurred through bank statements, contracts or purchase orders for products and/or services, and invoices.<br><br>For the Staffing for Adequate Fire and Emergency Response program, documentation must demonstrate the outlay of payments to individual firefighters. | Assistance to Firefighters Grant Program, Fire Prevention & Safety, and Staffing for Adequate Fire and Emergency Response |
| National Incident Management System (NIMS) Grant Requirements | The Fiscal Year 2026 grant award terms and conditions require the Emergency Management Assistance Compact administrator to:<br>• Support national preparedness priorities and coordination with FEMA.<br>• Promote and facilitate the use of the National Qualification System among Emergency Management Assistance Compact members.<br>• Maintain robust data integration and reporting capabilities with FEMA systems.<br>• Ensure operational readiness and qualified personnel for mutual aid deployments. | National Incident Management System |

| Term and Condition Summary | Description | Applicable Program(s) |
| --- | --- | --- |
| | • Strengthen governance, stakeholder engagement, and subaward programs to enhance mutual aid across jurisdictions. | |

**PRE-DECISIONAL/DELIBERATIVE**

**Federal Emergency Management Agency**
Washington, DC 20472

FEMA

May 11, 2026

MEMORANDUM FOR THE SECRETARY

FROM: Karen S. Evans
Senior Official Performing the Duties of the Administrator
Federal Emergency Management Agency

SUBJECT: **Approval Requested - Key Decisions for Fiscal Year 2026 Preparedness Grant Programs (Part 1)**

---

**Purpose:** To request the Secretary of Homeland Security's approval on key programmatic decisions for the Fiscal Year 2026 Federal Emergency Management Agency (FEMA) preparedness grant programs.

**Background:** Last year, the Department of Homeland Security (DHS) and FEMA leadership made several decisions related to National Priority Areas, Law Enforcement Terrorism Prevention Activities, risk methodology, and funding allocations. These decisions helped align FEMA's grant programs with Administration priorities and the current threat environment. For Fiscal Year 2026, FEMA recommends largely maintaining these established programmatic decisions, with the exceptions of additional requirements for the Election Security National Priority Area and a return to a competition-first model for the Nonprofit Security Grant Program. The Election Security requirements are recommended by the Deputy Assistant Secretary for Election Integrity at the Department of Homeland Security. The adjustment for the Nonprofit Security Grant Program will enable FEMA to announce awards in a timely manner.

**Signature Level Justification:** FEMA preparedness grants are under the authority of the Secretary of Homeland Security.

**Timeliness:** A prompt response would be greatly appreciated. DHS and FEMA must release funding opportunities for Fiscal Year 2026 preparedness grant programs no later than 60 days after the April 30, 2026, enactment of the Fiscal Year 2026 Appropriations Act. As directed in the Act, FEMA will incur a reduction in its Operations and Support appropriation of $100,000 per day if any of these funding opportunities are released late after the 60-day requirement.

Case 1:25-cv-00485-MSM-RLA Document 48-4 Filed 10/08/25 Page 2 of 2 PageID #: 1278



**Recommendation:** Concur with recommendations outlined in Annex A and Annex B:

1. Retain the Fiscal Year 2025 National Priority Areas and spend requirements.
2. Require additional actions from each election jurisdiction for the Election Security National Priority Area.
3. Implement a 20% holdback from drawdown for Homeland Security Grant Program awards (inclusive of State Homeland Security Program, Urban Area Security Initiative, and Operation Stonegarden funds) until each state and high-risk urban area demonstrates proof of compliance with the Fiscal Year 2026 Election Security National Priority Area requirements.
4. Maintain the Fiscal Year 2025 Law Enforcement Terrorism Prevention Activities minimum requirement.
5. Approve the Fiscal Year 2026 Risk Methodology formula.
6. Allocate Operation Stonegarden funding to recipients as follows: 74% for the Southern border, 18% for the Northern border, and 8% for Coastal borders while considering sanctuary state and county impacts.
7. Continue to award the Transit Security Grant Program funding using risk-based allocations.
8. Revert to award the Nonprofit Security Grant Program using a competitive model, similar to awards prior to Fiscal Year 2025.

Approve/Date [signature] 5/28/25

Disapprove/Date________________________________

Modify/Date ________________________________

Needs discussion/Date________________________________

**Annex**
Annex A: Recommendation Details
Annex B: Risk Methodology Overview

U.S. Department of Homeland Security
Washington, DC 20472

FEMA

September 9, 2026

**DECISION**

MEMORANDUM FOR THE SECRETARY

FROM: Cameron Hamilton
Administrator

SUBJECT: **Deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions and FEMA Program Specific Information for Non-Disaster Grant Awards**

---

**Purpose**: To request your approval of additional deviations from the Fiscal Year 2026 Department of Homeland Security (DHS) Standard Terms and Conditions and FEMA program specific information for non-disaster grant awards.

**Context**: The Secretary approves deviations and program specific terms and conditions to include in Notices of Funding Opportunity and awards. This memorandum requests approval of additional terms and conditions for the Fiscal Year 2026 non-disaster grant awards, because of ongoing litigation and to align with program specific requirements.

**Signature Level Justification**: According to DHS policy in Section 6.2 of the DHS Financial Management Policy Manual, all deviations from the DHS Standard Terms and Conditions and additional program specific terms and conditions proposed by a DHS Component require DHS approval.

**Timeliness**: A response by September 14, 2026, would be greatly appreciated as FEMA must obligate funds no later than September 30, 2026.

**Recommendation**: Approve the FEMA provided deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions and program specific terms and conditions for Fiscal Year 2026 non-disaster grant awards. The deviations support the agency's risk management related to ongoing grant litigation, court orders, and agency policy.

Approve/date 9/14/26

Disapprove/date______________________________

Modify/date ______________________________

Needs discussion/date______________________________

Annexes
1. Background
2. Additional Deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions for Fiscal Year 2026 Non-Disaster Grant Awards
3. Additional Program Specific Terms and Conditions

**Annex 1: Background**

Chapter 6 of the DHS *Financial Management Policy Manual (FMPM)* provides policy on the Department of Homeland Security's Financial Assistance and establishes the processes and requirements for managing DHS financial assistance to ensure compliance, transparency and consistency across all component program activities. According to Section 6.2 of the FMPM, updated as of April 21, 2026, all DHS component program deviations language from the DHS Standard Terms and Conditions and additional program-specific proposed information by DHS components must be approved by the DHS Under Secretary for Management.

Each Notice of Funding Opportunity is incorporated into the award by reference and undergoes its own approval process. Accordingly, this memo does not repeat terms or clarify additional terms already included in the funding opportunity, which have been approved. Instead, this memo addresses additional terms and conditions not outlined in the funding opportunity.

There are several DHS Standard Terms and Conditions that may not be applied to FEMA grants as required by litigation orders or because they require special approval due to their subject matter. Additionally, FEMA applies program-specific terms and conditions that incorporate and clarify the statutory, regulatory and policy requirements unique to particular programs, which the DHS Standard Terms and Conditions do not address, consistent with 2 C.F.R. Sections 200.208 and 200.211.

These deviations and program specific conditions are included in the subsequent annexes.

**Annex 2: Additional Deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions**

In general, FEMA non-disaster grant awards incorporate the current (as of their publication date) DHS Standard Terms and Conditions by reference. However, there are several DHS standard terms and conditions that may not be applied to FEMA grants pursuant to litigation or because they require special approval due to their subject matter. These are summarized below in Table 1.

**Table 1**: Summary of Deviations from the Fiscal Year 2026 DHS Standard Terms and Conditions for FEMA

| DHS Standard Term and Condition | Description | Applicable Program(s) |
| --- | --- | --- |
| Federal Anti-Discrimination Laws Material to the Government's Payment Decisions Under the False Claims Act | Term does not apply to grants awarded to plaintiffs covered by the following preliminary injunction orders or any other similar orders issued in current or future lawsuits:<br>• *City of Fresno, et al. v. Mullin, et al.*, No. 3:26-cv-01535-WHO (N.D. Cal.).<br>• *City of Salem v. Mullin et al.*, No Case No. 6:26-cv-01340-MC (D. Or.).<br><br>If the preliminary injunction is stayed, vacated or extinguished, the term will immediately become effective. | All |
| All Executive Orders Related to Grants | Term does not apply to grants awarded to plaintiffs covered by the following preliminary injunction orders or any other similar orders issued in current or future lawsuits:<br>• *City of Fresno, et al. v. Mullin, et al.*, No. 3:26-cv-01535-WHO (N.D. Cal.).<br>• *City of Salem v. Mullin et al.*, No Case No. 6:26-cv-01340-MC (D. Or.).<br><br>If the preliminary injunction is stayed, vacated or extinguished, the term will immediately become effective. | All |
| Communication and Cooperation with the Department of Homeland Security and Immigration Officials | Term states that the Department of Homeland Security will analyze whether the conditions in this section will be applied to any grant program in a way that is consistent with the specific statutes that apply to each grant program because the purpose of each grant program has a nexus to immigration activities, law enforcement, or national security, including | Included here for reference, but decision will be made by the Immigration Terms & Conditions Memo. |

| | | |
|---|---|---|
| | preventing and responding to acts of terrorism and extremism. It does not apply to programs where the Department has not approved its application. Additionally, paragraph (2)(a)(ii) of the DHS Standard Term and Condition titled "Federal Anti-Discrimination Laws Material to the Government's Payment Decisions Under the False Claims Act" will not apply to awards that do not apply the "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" term. | |
| Termination of a Federal Award | On May 14, 2026, the Senior Official Performing the Duties of the Under Secretary of Homeland Security for Management approved FEMA's recommendation to apply a more comprehensive termination term and condition that addresses specific issues not addressed in the DHS Standard term as well as complies with Executive Order 14332, *Improving Oversight of Federal Grantmaking*.<br><br>FEMA will continue to apply that term and condition to all awards except when FEMA is prohibited from applying certain provisions of the term and condition to grants awarded to plaintiffs covered by the following preliminary injunction order or any other similar orders issued in current or future lawsuits:<br>• *City of Salem v. Mullin et al.*, No Case No. 6:26-cv-01340-MC (D. Or.). | All |

**Annex 3: Additional Program Specific Terms and Conditions**

Table 2 provides a summary of additional program-specific terms and conditions that will be included in Fiscal Year 2026 non-disaster grant awards. Some are broadly applicable, and some are applicable to a specific grant program. Even if a term and condition is applicable to a program, FEMA may not necessarily include it in an individual award package under that grant program.

**Table 2: Additional Program Specific Terms and Conditions**

| Term and Condition | Description | Applicable Program(s) |
|---|---|---|
| Foreign National Vetting | For programs subject to FEMA's foreign national vetting policy and as stated in Information Bulletin 568, the recipient and its subrecipients must comply with FEMA policy and process for foreign national vetting in non-disaster grant programs. Subrecipients must vet all individuals whose salaries, wages or fringe benefits are charged to the subaward and provide the required certification to the recipient. The recipient must submit the required information for each individual within the scope of Information Bulletin 568 and must not permit an individual whose vetting has not been completed to access grant-funded facilities, systems or information, unless stated otherwise in the bulletin. The recipient must retain vetting documentation and make it available to FEMA upon request. | Programs listed in the footnote[1] |
| Fusion Centers | Fusion centers expending Fiscal Year 2026 Homeland Security Grant Program funds must provide meaningful intelligence support to the appropriate regional Homeland Security Task Force. The 2026 Preparedness Grants Manual states that fusion centers must "maintain strong partnerships to enable intelligence, operational, investigative, and analytic collaboration and deconfliction of threat information with other partners located within their jurisdiction and across their region." The most important part of this requirement will be support for the | Homeland Security Grant Program |

[1] BioWatch, Building Resilient Infrastructure and Communities, Community Assistance Program–State Support Services Element, Counter-Unmanned Aircraft Systems Grant Program, Detention Support Grant Program, Emergency Food and Shelter Program, Emergency Management Performance Grant Program, Flood Mitigation Assistance, FIFA World Cup Grant Program, Flood Mitigation Assistance Swift Current, Homeland Security Grant Program, Homeland Security National Training Program – Alliance for System Safety of Unmanned Aircraft Systems through Research Excellence, Homeland Security National Training Program – Continuing Training Grants, Homeland Security National Training Program – National Cybersecurity Preparedness Consortium, Homeland Security National Training Program – National Domestic Preparedness Consortium, Intercity Bus Security Grant Program, Intercity Passenger Rail, National Dam Safety Program, National Earthquake Hazards Reduction Program – Individual State Earthquake Assistance, National Earthquake Hazards Reduction Program - Multi-State and National Earthquake Assistance, National Incident Management System, Next Generation Warning System Grant Program, Nonprofit Security Grant Program, Port Security Grant Program, Regional Catastrophic Preparedness Grant Program, State and Local Cybersecurity Grant Program, State Border Security Reinforcement Fund, State Fire Training Systems Grant, Targeted Violence and Terrorism Prevention, Transit Security Grant Program, Tribal Cybersecurity Grant Program, Tribal Homeland Security Grant Program, Urban Search and Rescue Response System.

| | | |
|---|---|---|
| | appropriate regional task force. Homeland Security Task Forces (HSTF)were created through Section 6 of Executive Order 14159, which states:<br><br>"The objective of each HSTF is to end the presence of criminal cartels, foreign gangs, and transnational criminal organizations throughout the United States, dismantle cross-border human smuggling and trafficking networks, end the scourge of human smuggling and trafficking, with a particular focus on such offenses involving children, and ensure the use of all available law enforcement tools to faithfully execute the immigration laws of the United States."<br><br>Fusion centers are expected to further these objectives through formally coordinating with the appropriate regional task force by providing intelligence, logistical and operational support. Fusion centers must provide quarterly updates to the FEMA's Grants Programs Directorate, Homeland Security Programs Division. The update should include a general description of the type of support and the following metrics:<br><br>• Number of tips, leads or Suspicious Activity Reports provided to task forces.<br>• Number of personnel assigned to the task force within the fusion center's area of responsibility.<br>• Number of joint task force analytic products written and posted to the Homeland Security Information Network.<br><br>Fusion centers spending Fiscal Year 2026 Homeland Security Grant Program funds must provide intelligence support to federal law enforcement actions against identity theft and related crimes. The Homeland Security Grant Program lists "supporting border crisis response and enforcement" as a National Priority Area, and the Preparedness Grants Manual states that fusion centers "should leverage and build upon their terrorism-focused analytic and information-sharing capabilities so they can be applied to address threats across the DHS mission space." Specifically, fusion centers should leverage and build upon their terrorism-focused analytic and information-sharing capabilities to focus on federal law enforcement issues related to identity theft, identity mills, and illicit identification documents. Fusion centers must provide quarterly updates to FEMA's Grants Programs Directorate, Homeland Security Programs Division. The update should include a general description of the type of support and the following metrics: | |

- Number of tips, leads or Suspicious Activity Reports sent to DHS or other federal partners involving:
    - Identity theft;
    - “Identity mills” (businesses or informal networks producing or selling identities);
    - Fraudulent identity or supporting documents; and
    - Patterns of repeated ID fraud.
- Updates on participation in Department of Homeland Security 287(g) programs.
    - Provide updates on whether the lead agency for the fusion center is an active 287(g) partner with a current, fully executed, and operational Memorandum of Agreement.
- The number of seats the fusion center holds for officials from U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations.

Fusion centers funded by the Fiscal Year 2026 Homeland Security Grant Program must support federal initiatives to trace proceeds from federal benefit fraud that are sent to foreign recipients, focusing on terrorist and transnational criminal organizations. The Preparedness Grants Manual states that fusion centers “should leverage and build upon their terrorism-focused analytic and information-sharing capabilities so they can be applied to address threats across the DHS mission space, including…threats from…transnational organized criminal activity.” This activity may be conducted through support to the appropriate Homeland Security Task Force and in accordance with the requirements outlined in Section One. Fusion centers must provide quarterly updates to the FEMA Homeland Security Programs Division, Grants Programs Directorate. The update should include a general description of the type of support and the following metrics:

- Number of tips, leads or Suspicious Activity Reports regarding suspected fraud involving federal benefits, including grants, subsidies or assistance programs, with descriptions of the type of fraud.
- Number of products that analyze outbound remittances or wire transfers linked to suspected benefit fraud.

Fusion centers expending Fiscal Year 2026 Homeland Security Grant Program funds must prioritize intelligence activities according to the Homeland Security Intelligence Priorities Framework. Intelligence products must include the relevant framework priority topic, and most intelligence products must

| | | |
|---|---|---|
| | align with Priority One topics. Fusion centers must provide quarterly updates to the FEMA Homeland Security Programs Division, Grants Programs Directorate. The update should include a general description of how fusion centers use the Homeland Security Intelligence Priorities Framework to allocate resources and personnel. | |
| Pass-Through of Funds to Local and Tribal Governments | As required by 6 U.S.C. § 605(c) for the State Homeland Security Program and 6 U.S.C. § 604(d) for the Urban Area Security Initiative, the recipient must make available to local and tribal governments at least80% of the funds awarded under these programs within 45 days. The recipient may satisfy this requirement with funds or, with the consent of those governments, with items, services or activities of equivalent value. This requirement applies to funds from these two programs but not to Operation Stonegarden funds.<br><br>The 45-day period runs separately for each amount of State Homeland Security Program and Urban Area Security Initiative funding that becomes available to the recipient. For funds available at the time of award, the period begins on the date the recipient receives the funds. For amounts withheld under the Election Security Compliance Withhold, and for amounts allocated to projects subject to a programmatic hold, the funds are not available at the time of award. Consistent with Information Bulletin 550 the period does not begin for those funds until FEMA notifies the recipient in writing that the withhold has been released or that the project has been approved, beginning instead on the date of that written notice. A hold on one amount does not suspend the period for any other amount, and funds available at the time of award must still be passed through within 45 days of receipt.<br><br>For each such period, the recipient must pass through at least80% of the State Homeland Security Program and Urban Area Security Initiative funds that became available at the beginning of that period. Meeting this obligation in each period satisfies the 80% requirement for the award as a whole.<br><br>The Election Security Compliance Withhold is calculated on the total Homeland Security Grant Program award, which includes Operation Stonegarden, The pass-through requirement reaches only State Homeland Security Program and Urban Area Security Initiative. FEMA applies the withhold to State Homeland Security Program, Urban Area Security Initiative, and Operation Stonegarden in proportion to each subprogram's share of the total award, and the recipient calculates its pass-through obligation using only the State Homeland Security Program and Urban Area Security Initiative portions. An amount may be subject to both | Homeland Security Grant Program |

| | | |
|---|---|---|
| | the withhold and a programmatic hold, in which case it is released only when every applicable withhold and hold has been lifted, and its 45-day period begins on the date of the last written release notice.<br><br>The recipient must certify to the administrator that the required distribution has been made, as required by 6 U.S.C. §§ 605(c)(2) and 604(d)(4). A separate certification is required for each period, and each certification must identify the date the period began, the amount that became available, the amount passed through, and the local and tribal governments to which it was made available. FEMA records the release date of each amount in the FEMA Grants Outcomes system.<br><br>This condition does not extend the period of performance. Where the cumulative effect of the withhold and the programmatic holds compresses the time available to the recipient, the recipient may request an extension of the period of performance in accordance with the Preparedness Grants Manual. This condition does not limit the authority of the Governor to request in writing that the FEMA Administrator extend the 45-day period under 6 U.S.C. § 605(c)(3), or the right of a local or tribal government to petition the administrator under 6 U.S.C. § 605(c)(5). | |
| Election Security Compliance Withholding | FEMA has withheld an amount equal to 20% of the recipient's total Homeland Security Grant Program award, comprising the State Homeland Security Program, the Urban Area Security Initiative, and Operation Stonegarden, in the amount of $[Total Amount Withheld]. The withheld amount is not available to the recipient and is not tied to any particular project. Until the withheld amount is released, the recipient's cumulative obligations, expenditures, and drawdowns under this award must not exceed the total award, less the withheld amount. Within that available balance, the recipient may fund any of its approved projects.<br><br>The recipient obtains release of the withheld amount by submitting proof of compliance with the FY 2026 Election Security National Priority Area requirements. Proof of compliance means the certification and supporting documentation submitted through the FEMA Grants Outcomes system. Once the Department verifies and confirms that proof, it will notify the recipient in writing and release the withheld amount for drawdown in accordance with applicable grant administration requirements. | Homeland Security Grant Program |
| Recipient Responsibility for Resolving SAA and Federal | FEMA has not placed a funding hold on this award. The full allocation amount listed in the award document is available in FEMA financial systems, and the recipient may obligate, expend and draw down these funds for the approved projects. | Nonprofit Security Grant Program |

| | | |
|---|---|---|
| Review Discrepancies | The availability of funds does not resolve any discrepancy identified during the State Administrative Agency review or the federal review. The recipient must work with its assigned FEMA Preparedness Officer to address any discrepancy identified during the review and to determine whether any affected subrecipient can carry out its approved project under the terms of this award. The recipient remains responsible for resolving these matters before closeout.<br><br>The recipient must not make a subaward to an organization that was not selected under this program and must not move funds from a selected subrecipient to another organization without prior written approval from FEMA. | |
| Pass-Through Requirement | The recipient must pass through at least 95% of the federal award to the nonprofit organizations selected for funding. The recipient may retain no more than 5% of the federal award for management and administration costs. Pass-through means making a subaward. A letter of intent, or a notice that a subaward is forthcoming, does not satisfy this requirement. The recipient must provide each selected nonprofit organization the terms of its subaward and must make the funds available so that the organization can begin its project.<br><br>The 45-day pass-through period begins on the date FEMA removes the funding hold under the article titled Rescission of Funding Hold: Additional Information Required and makes the funds available to the recipient in the FEMA Grants Outcomes system.<br><br>Making a subaward under this article does not authorize a subrecipient to incur costs for a project component that remains subject to environmental and historic preservation review. The article titled Environmental Planning and Historic Preservation Review continues to apply in full, and no subrecipient may incur costs for any component subject to that review until FEMA completes the review and issues its determination. | Nonprofit Security Grant Program |
| Rescission of Funding Hold: Operational Package | This is a term/condition required to remove a hold placed due to the applicant not submitting the required five-year capital and operational sustainment plan with their application. | Intercity Passenger Rail Program |
| Rescission of Funding Hold: Operational Package Hold | This is a term/condition required to remove a hold placed due to the applicant not submitting the required five-year capital and operational sustainment plan with their application. | Transit Security Grant Program |

| | | |
|---|---|---|
| Closeout Liquidation/ Period of Performance Extension | Notifies recipients that a period of performance extension is being granted in FEMA Grants Outcomes as an administrative matter to extend the closeout liquidation period in that portal. | All |
| Programmatic Performance Reporting Requirements | While complying with all applicable regulatory and policy requirements, FEMA will conduct post-award monitoring to assess recipient and subrecipient progress toward the performance measures and targets identified in this funding notice. Monitoring may include FEMA-led or expert-led inspections, technical reviews, documentation reviews, site visits, milestone validation, and closeout review. FEMA will not rely solely on recipient self-reporting through the Performance Progress Report to verify project performance. FEMA may provide additional programmatic guidance in the award package or post-award materials regarding inspection procedures, documentation expectations, milestone validation, and the application of performance measures and targets.<br><br>Recipients and subrecipients demonstrating strong performance may be eligible for streamlined administrative requirements, reduced monitoring burden, or other administrative efficiencies, as determined by FEMA and consistent with applicable requirements. Recipients or subrecipients whose performance is deemed insufficient may be subject to more frequent inspections, milestone-based funding or reimbursement, required technical assistance, corrective action plans, additional documentation requirements, and additional award conditions until FEMA determines that performance has improved. | National Dam Safety Program – Rehabilitation of High Hazard Potential Dams |
| Programmatic Compliance and Approval Requirements | These terms emphasize that FEMA retains final approval and oversight authority over CAP-SSSE recipient activities, including community admission to the NFIP and CRS, required map adoption rates, federally funded activities, compliance work, eligible payments, contract selections, and changes to approved activities. FEMA may also require corrective actions or stop funded activities if recipients fail to meet program requirements. For example, FEMA retains the authority to determine whether to admit communities to the Community Rating System, including determinations related to state-reviewed, community-submitted regulations and activities. | Community Assistance Program – State Support Services Element |

U.S. Department of Homeland Security
Washington, DC 20472

FEMA

September 11, 2026

**DECISION**

MEMORANDUM FOR THE SECRETARY

FROM: Cameron Hamilton
FEMA Administrator

SUBJECT: **Fiscal Year 2026 FEMA Non-Disaster Grant Programs Immigration Term and Condition Determinations**

---

**Purpose:** To request approval to apply the Immigration Term and Condition to certain Fiscal Year 2026 non-disaster grant awards administered by the Federal Emergency Management Agency (FEMA). FEMA recommends applying the condition to awards under nine programs.

**Background or Context:** These determinations are made under the Fiscal Year 2026 DHS Standard Terms and Conditions, which apply to all FEMA grant awards unless a term and condition specifically indicates otherwise. Under these terms, DHS will review each grant program to ensure that certain immigration conditions are applied consistent with the laws governing that program, particularly where the program relates to immigration, law enforcement, or national security. The programs listed in Annex A are the programs to which the immigration term and condition applies.

This approach is reflected in the term titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in the Fiscal Year 2026 DHS Standard Terms and Conditions, which states:

> The Department of Homeland Security will analyze whether the conditions in this section will be applied to any grant program in a way that is consistent with the specific statutes that apply to each grant program because the purpose of each grant program has a nexus to immigration activities, law enforcement, or national security, including preventing and responding to acts of terrorism and extremism, and DHS may tailor the conditions in this section to a specific grant program. DHS will clarify in the grant documents whether and how the terms in this section apply to each grant.

Pursuant to this term and condition, FEMA conducted a statutory analysis of its grant portfolio. This review identified nine grant programs for application of an Immigration Term and Condition, reflecting a focused approach based on statutory alignment. FEMA recommends applying the Immigration Term and Condition to the nine grant programs listed in Annex A because the purpose of each grant program has a nexus to immigration activities, law enforcement, or national security, including preventing and responding to acts of terrorism and extremism.

**Signature Level Justification:** The applicability of this Immigration Term and Condition requires Department-level approval.

**Timeliness:** A decision is needed as soon as possible so the Immigration Term and Condition language can be included in the Fiscal Year 2026 grant award packages. Any delay would postpone the Fiscal Year 2026 disbursement cycle and the release of funds and creates additional risk for DHS by potentially failing to meet statutory deadlines. These funds expire on September 30, 2026.

**Recommendation:** Approve the inclusion of the Immigration Term and Condition in the award packages for the ten programs listed in Annex A, and not including them for the programs listed in Annex B.

Approve/date ______________________ Disapprove/date ______________________

Modify/date ______________________ Needs discussion/date ______________________

**Annex A: Programs for which Immigration Term and Condition Apply**

FEMA recommends applying the Immigration Term and Condition to the nine programs below. Each is recommended to be designated because its program purpose has a direct nexus to immigration activities, law enforcement, or national security. Further analysis is included in Annex B.

| Program | Authorizing Authority | Purpose |
|---|---|---|
| **Emergency Management Performance Grant** | 6 U.S.C. § 762; 42 U.S.C. §§ 5121 et seq., 7701 et seq., and 4001 et seq. | Supporting state and local emergency management capabilities |
| **Homeland Security National Training Program – Continuing Training Grants Competitive** | Homeland Security and Further Additional Continuing Appropriations Act, Pub. L. No. 119-86 (2026). | Provides funding through cooperative agreements using a competitive process to develop and deliver FEMA-certified training that addresses specific gaps. |
| **Operation Stonegarden** | 6 U.S.C. § 605 | Provides funding to enhance cooperation and coordination among state, local, tribal, territorial, and federal law enforcement agencies to jointly enhance security along the United States land and water borders. |
| **Port Security Grant Program** | 46 U.S.C. § 70107 | Maritime infrastructure and border security |
| **Regional Catastrophic Preparedness Grant Program*** | Homeland Security and Further Additional Continuing Appropriations Act, Pub. L. No. 119-86 (2026). | Supports the building of core capabilities essential to achieving the National Preparedness Goal of a secure and resilient nation by providing resources to close known capability gaps in Housing and Logistics and Supply Chain Management, encouraging innovative regional solutions to issues related to catastrophic incidents, and building on existing regional efforts. |
| **Securing The Cities** | 6 U.S.C. § 596b | Enhances the ability of the United States to detect and prevent terrorist attacks and other high-consequence events utilizing nuclear or other radiological materials that pose a high risk to homeland security in high risk urban areas. |
| **State Homeland Security Program** | 6 U.S.C. § 605 | Building and sustaining state and local capabilities related to preventing, |

| Program | Authorizing Authority | Purpose |
|---|---|---|
| | | preparing for, protecting against, and responding to acts of terrorism |
| **Transit Security Grant Program** | 6 U.S.C. § 1135 | Surface transportation security against terrorism |
| **Urban Area Security Initiative** | 6 U.S.C. § 604 | High-threat, high-density urban area security |

*In June 2026, DHS gave direction to make a Regional Catastrophic Preparedness Grant Program award to New Jersey. The program guidance for the New Jersey award included language saying the Immigration Term and Condition does not apply. The Immigration Term and Condition will only apply to the Miami-Dade Regional Catastrophic Preparedness Grant Program award.

**Annex B: Grant Program Analysis for those to include the Immigration Term and Condition**

FEMA assessed preparedness grant programs and proposes implementing an Immigration Term and Condition on Fiscal Year 2026 grant awards for the nine programs listed below.

1. **Emergency Management Performance Grant Program**

   FY 2026 Funding Amount: $337,250,000

   Purpose: To assist state, local, tribal, and territorial governments "in preparing for all hazards" and all phases of emergency management.

   Award Criteria: Mandatory allocations to each state based on a statutory formula.

   Nexus: All-hazards emergency preparedness and operational coordination.

   Analysis: The Emergency Management Preparedness Grant Program supports state and local efforts to build a comprehensive emergency management system. This includes preparedness and response coordination for man-made disasters, security threats, and acts of terrorism, which directly aligns with national security objectives.

2. **Homeland Security National Training Program – Continuing Training Grants Competitive**

   FY 2026 Funding Amount: $5,700,000

   Purpose: To help training partners develop and deliver training to prepare whole communities to prevent, protect against, mitigate, respond to, and recover from acts of terrorism, and natural, man-made, and technological hazards.

   Award Criteria: Discretionary, no statutory award criteria. Per the Fiscal Year 2026 Notice of Funding Opportunity, the Joint Explanatory Statement accompanying the Fiscal Year 2026 DHS Appropriations Act (Pub. L. No. 118-47) directs Continuing Training Grants to be competitively awarded for FEMA-certified rural and tribal training.

   Nexus: Responder capability building for countering terrorism and other security threats.

   Analysis: This program funds targeted training for first responders and law enforcement on handling active threats, weapons of mass destruction, and tactical responses. Building these specialized law enforcement capabilities directly supports national counter-terrorism efforts.

3. **Operation Stonegarden**

FY 2026 Funding Amount: $81,000,000

Purpose: Operation Stonegarden funds target expenditure by local governments for the purpose of border protection and border security.

Award Criteria: Discretionary, competitive awards to states with 100 percent of funds sub-awarded to local law enforcement. The Department adopts the requirement for competition and criteria for award that is provided for in the legislative history of the appropriations act funding the program.

Nexus: Border security and joint law enforcement operations.

Analysis: Operation Stonegarden is designed to enhance cooperation among local, state, tribal, and federal law enforcement agencies to secure international land and water borders. This directly involves immigration enforcement support and border security operations, creating a direct nexus to immigration activities. Operation Stonegarden is designed to improve cooperation among law enforcement agencies to secure the international borders of the United States. Grant-funded activities depend on coordination, information sharing, joint planning, and operational cooperation across levels of government. Recipients and subrecipients that restrict communication or cooperation with DHS or immigration officials could impede information sharing, create operational gaps, undermine joint planning, and reduce the effectiveness of border security operations.

4. **Port Security Grant Program**

FY 2026 Funding Amount: $95,000,000

Purpose: Assistance to port authorities, facility operators, and state and local governments for maritime transportation infrastructure security.

Award Criteria: Statute requires that funds be allocated based on risk, but otherwise discretionary.

Nexus: Maritime critical infrastructure protection.

Analysis: The Port Security Grant Program builds security capabilities at maritime ports of entry, which are vital border locations. Protecting these boundaries and supporting maritime law enforcement activities establishes both a national security and a border enforcement nexus.

5. **Regional Catastrophic Preparedness Grant Program**

FY 2026 Funding Amount: $11,400,000

Purpose: Supports the building of core capabilities essential to achieving the

National Preparedness Goal of a secure and resilient nation by providing resources to close known capability gaps in Housing and Logistics and Supply Chain Management, encouraging innovative regional solutions to issues related to catastrophic incidents, and building on existing regional efforts.

Award Criteria: Discretionary program with no statutory award criteria. This program is administered through a competitive selection process.

Nexus: Catastrophic threat management.

Analysis: The Regional Catastrophic Preparedness Grant Program focuses on regional coordination to manage large-scale catastrophic incidents, including major terrorist attacks. This large-scale readiness is essential for national continuity and homeland defense.

**6. Securing the Cities**

FY 2026 Funding Amount: $12,600,000

Purpose: Securing the Cities reduces the risk of a successful deployment of nuclear or radiological weapons against 14 major metropolitan areas in the United States. This grant program assists state and local partner agencies as they build regional capabilities to detect, analyze, and report nuclear and other radioactive materials.

Award Criteria: Cooperative agreement; 14 pre-identified major metropolitan areas based on risk.

Nexus: Radiological and nuclear threat detection.

Analysis: Securing the Cities operates in high-risk urban areas to detect and prevent unauthorized attempts to use nuclear or radiological materials. This is a high-level counter-terrorism and national security initiative designed to prevent catastrophic attacks.

**7. State Homeland Security Program**

FY 2026 Funding Amount: $373,500,000

Purpose: Assists states and local and tribal governments in building and sustaining capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

Award Criteria: Statutory minimum allocation for each state with remaining awarded based on risk calculated using statutory criteria.

Nexus: Terrorism preparedness and law enforcement coordination.

Analysis: The State Homeland Security Program explicitly funds state and local capabilities to prevent, prepare for, protect against, and respond to acts of terrorism. It heavily funds Law Enforcement Terrorism Prevention Activities (LETPA), establishing a nexus to law enforcement and national security.

**8. Transit Security Grant Program**

FY 2026 Funding Amount: $88,350,000

Purpose: This program provides funds to public transit agencies to protect critical surface transportation infrastructure and the traveling public from acts of terrorism.

Award Criteria: Discretionary, competitive awards based on statutory criteria that require prioritization of funding based on risk.

Nexus: Transportation infrastructure security.

Analysis: The Transit Security Grant Program protects surface transportation systems and travelers from acts of terrorism. Because it focuses on safeguarding public soft targets through law enforcement and security enhancements, it directly supports national security.

**9. Urban Area Security Initiative**

FY 2026 Funding Amount: $553,500,000

Purpose: Financial assistance to high-risk urban areas in building and sustaining capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

Award Criteria: Awards based on risk calculated using statutorily required criteria. Discretion in determining how many high-risk urban areas shall receive funding through a State, but that discretion is often limited or guided by Congress through the annual appropriations process.

Nexus: High-threat urban area protection.

Analysis: The Urban Area Security Initiative targets high-density, high-threat metropolitan areas to build capability to respond to terrorist attacks. Its sole purpose is terrorism prevention and response in vulnerable target zones, establishing a nexus to law enforcement and national security.

## Attachment 1: Programs for which Immigration Term and Condition Will Not Apply

FEMA non-disaster programs listed below will not have an Immigration Term and Condition applied.[1]

In his declaration made on July 23, 2025, for *Illinois, et al v. FEMA et al.*, David Richardson, then the Senior Official Performing the Duties of Administrator for FEMA, provided a list of non-disaster grant programs which are exempt from the Immigration Term and Condition:

- Assistance to Firefighter Grants
- Building Resilient Infrastructure and Communities
- Chemical Stockpile Emergency Preparedness Program
- Community Assistance Program – State Support Services Element
- Cooperating Technical Partners
- Emergency Food and Shelter Program
- Emergency Management Baseline Assessments Grant
- Emergency Operations Center
- Fire Prevention and Safety
- Flood Mitigation Assistance
- Flood Mitigation Assistance Swift Current
- Homeland Security National Training Program – National Domestic Preparedness Consortium
- Homeland Security National Training Program – National Cybersecurity Preparedness Consortium
- Homeland Security Preparedness Technical Assistance Program
- National Dam Safety Program
- National Earthquake Assistance Grant Program
- National Earthquake Hazards Reduction Program and Multistate and National Earthquake Assistance Grant Program
- National Earthquake Hazards Reduction Program – Individual State Earthquake Assistance
- National Fire Academy Training Assistance
- National Incident Management Systems/Emergency Management Assistance Compact Program
- Nonprofit Security Grant Program
- Nonprofit Security Grant Program – National Security Supplemental
- Pre-Disaster Mitigation
- Pre-Disaster Mitigation Congressionally Directed Spending/Legislative Pre-Disaster Mitigation

---

[1] These programs will not apply the term titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials", and it will not apply paragraph (2)(a)(ii) of the term titled "Federal Anti-Discrimination Laws Material to the Government's Payment Decisions Under the False Claims Act."

- Rehabilitation of High Hazard Potential Dams Grant Program
- Safeguarding Tomorrow Revolving Loan Fund/Safeguarding Tomorrow through Ongoing Risk Mitigation Act
- Staffing for Adequate Fire and Emergency Response
- State and Local Cybersecurity Grant Program
- State Fire Training System Grants
- Urban Search and Rescue

U.S. Department of Homeland Security
Washington, DC 20472

FEMA

September 18, 2026

MEMORANDUM FROM: Pamela S. Williams
Deputy Assistant Administrator (Acting)
Grant Programs Directorate

PAMELA S WILLIAMS Digitally signed by PAMELA S WILLIAMS Date: 2026.09.18 09:59:55 -04'00'

SUBJECT: Further Reasoning Regarding Fiscal Year 2026 FEMA Non-Disaster Grant Program Term and Condition Determinations.

---

On September 11, 2026, Federal Emergency Management Agency Administrator Cameron Hamilton sent a memorandum to the Secretary of the Department of Homeland Security titled "Fiscal Year 2026 FEMA Non-Disaster Grant Program Term and Condition Determinations."

This memorandum provides further explanation to the rationale underlying the decision whether to apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials".

The Federal Emergency Management Agency (FEMA) assessed the following non-disaster grant programs and proposes to implement the following approaches for implementing the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on grant awards issued in Fiscal Year 2026.

**1. Biowatch**

FY 2026 Funding Amount: $35,000,000

Purpose: Designed to detect aerosolized biological attacks by continuously monitoring the air for specific biological threats using strategically placed air collectors.

Award Criteria: Cooperative agreement; 30 jurisdictions pre-identified; eligible applicants are assessed based on their experience and technical approach.

Nexus: Early detection of biological terrorism.

Analysis: This program monitors air quality in major metropolitan areas to provide early warning of biological attacks. Because it is designed to detect biological warfare agents, it has a direct and critical national security mission focused on preventing and responding to acts of terrorism.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" to future grant awards.

Rationale: BioWatch assists state and local governments to build capabilities for detecting the presence of biological agents for prevention of their use in a terrorist attack or to assist in the response to such attack. The program protects communities from the risk that an individual immigrating illegally would seek to import or use biological agents or nuclear materials for the purpose of terrorism. The purposes of these programs could be undermined if the Department were to award funds to local governments that are violating federal statutes and policies designed to support immigration law enforcement to protect national security. In creating DHS, Congress expressly found that "[t]he Federal Government relies on State and local personnel to protect against terrorist attacks." 6 U.S.C. § 481 (b)(2).

This is particularly true as to information sharing. The 9/11 Commission expressly recognized failures in information sharing between law enforcement agencies as a cause of terrorist attacks. Its Report recognized "pervasive problems of managing and sharing information across a large and unwieldy government." 9/11 Commission Report at xvi. Similarly, in creating DHS, Congress expressly found that "State and local personnel have capabilities and opportunities to gather information on suspicious activities and terrorist threats not possessed by Federal agencies." 6 U.S.C. § 481 (b)(8).[1]

**2. Emergency Management Performance Grant Program**

FY 2026 Funding Amount: $337,250,000

Purpose: To assist State, local, tribal, and territorial governments "in preparing for all hazards" and all phases of emergency management.

Award Criteria: Allocations to each State based on a statutory formula.

Nexus: All-hazards emergency preparedness and operational coordination.

Analysis: The Emergency Management Preparedness Grant Program (EMPG) supports State and local efforts to build a comprehensive emergency management system. This includes preparedness and response coordination for man-made disasters, security threats, and acts of terrorism, which directly aligns with national security objectives.

[1] Based on direction from the Department, the September 11 memo does not reference BioWatch because it was already implied that the DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" applies to the BioWatch program.

Approach. Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" to future grant awards.

Rationale: There is a rational relationship between the purpose of the EMPG to fund support for State and territory emergency management and the purpose of the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials".

The EMPG is statutorily authorized "to assist State, local, and tribal governments in preparing for all hazards." 6 U.S.C. § 762(b). The term "hazard," as defined by the Stafford Act, encompasses "an emergency or disaster resulting from a natural disaster or an accidental or man-caused event." 42 U.S.C. § 5195a(a)(1). Emergency preparedness, in turn, is defined to include "all activities and measures designed or undertaken to prepare for or minimize the effects of a hazard upon the civilian population [and] to deal with the immediate emergency conditions which would be created by the hazard." 42 U.S.C. § 5195a(a)(3). Accordingly, the statutory framework of EMPG clearly contemplates and authorizes the use of grant funds for the preparation and mitigation of hazards that affect national security, whether those hazards arise from natural causes or are the result of human actions.

Both the EMPG program and the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" are designed to address hazards that implicate national security, including those arising from unchecked immigration and border-related crises. On January 20, 2025, President Trump issued a proclamation declaring a national emergency at the southern border of the United States, citing widespread violence, narcotic trafficking, gang activity, terrorist threats, and the urgent need to prevent the entry of illegal aliens into the United States. (https://www.whitehouse.gov/presidential-actions/2025/01/declaring-a-national-emergency-at-the-southern-border-of-the-united-states/). This declaration underscores the nexus between immigration enforcement and national security, as well as the necessity for State and local governments to cooperate with federal authorities in addressing these hazards.

The EMPG program permits the use of funds to plan and prepare for hazards directly impacting national security. The Fiscal Year 2026 EMPG Notice of Funding Opportunity (NOFO) explicitly allows grant recipients to use funds for the development of Emergency Operations Plans, Public Alert and Warning System Plans, Communications Plans, Administrative Plans, Resource Management Plans, Shelter and Evacuation Plans, Recovery Plans, and Continuity Plans. These planning activities are intended to enhance preparedness for a wide range of hazards, including terrorist attacks, natural disasters, civil unrest, and other threats to national security.

EMPG funds may also be used to support emergency management-related training activities, thereby enhancing the capabilities of State and local emergency management personnel. Such training may include instruction and exercises related to the management of emergencies that implicate national security and associated hazards. Moreover, EMPG funds are available for construction and renovation projects for principal Emergency Operations Centers (EOCs) operated by State, local, tribal, or territorial governments. These EOCs serve as the central hub for coordinating responses to all hazards, including those related to national security and law enforcement.

The statutory purpose of EMPG program may be undermined if States and local governments receive grant funds to protect against threats to national security but simultaneously refuse to coordinate or share information with the Department of Homeland Security regarding law enforcement matters, including immigration enforcement. Such refusal may constitute a violation of applicable federal statutes and frustrate the objectives of the EMPG program by impeding the effective management of hazards that threaten national security. Therefore, the imposition of the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration Officials” on EMPG awards is legally permissible and justified by the statutory nexus between emergency management, law enforcement, and national security.

### 3. State Homeland Security Program

FY 2026 Funding Amount: $373,500,000

Purpose: Assists States and local and tribal governments in building and sustaining capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

Award Criteria: Statutory minimum allocation for each State with remaining awarded based on risk calculated using statutory criteria.

Nexus: Terrorism preparedness and law enforcement coordination.

Analysis: The State Homeland Security Program (SHSP) explicitly funds State and local capabilities to prevent, prepare for, protect against, and respond to acts of terrorism. It heavily funds Law Enforcement Terrorism Prevention Activities (LETPA), establishing a nexus to law enforcement and national security.

Approach. Apply the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration Officials” to future grant awards.

Rationale: FEMA could impose this condition because there is a rational relationship between the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration Officials” and the purpose of the program to assist States, territories, and local and tribal governments in preventing, preparing for, protecting against, and responding to acts of terrorism.

The SHSP statute establishes that the program’s purpose is to “to assist State, local, and tribal governments in preventing, preparing for, protecting against, and responding to acts of terrorism.” 6 U.S.C. 605(a). Funds are allocated based on each jurisdiction’s “relative threat, vulnerability, and consequences from acts of terrorism” and “anticipated effectiveness of the proposed use of the grant by the State or high-risk urban area in increasing the ability of that State or high-risk urban area to prevent, prepare for, protect against, and respond to acts of terrorism.” 6 U.S.C. 608(a).

In addition, the statute requires “that not less than 25 percent of the total combined funds appropriated . . . is used for law enforcement terrorism prevention activities.” 6 U.S.C. 607(a)(1).

This can include: information sharing and analysis; target hardening; threat recognition; terrorist interdiction; training exercises to enhance preparedness for and response to mass casualty and active shooter incidents and security events at public locations, including airports and mass transit systems; overtime expenses consistent with a State homeland security plan, including for the provision of enhanced law enforcement operations in support of Federal agencies, including for increased border security and border crossing enforcement; establishing, enhancing, and staffing with appropriately qualified personnel State, local, and regional fusion centers; paying salaries and benefits for personnel, including individuals employed by the grant recipient on the date of the relevant grant application, to serve as qualified intelligence analysts; and any other terrorism prevention activity authorized by the FEMA Administrator. 6 U.S.C. 607(a)(2).

For FY 2026, the Homeland Security Grant Program (HSGP) NOFO, which covers SHSP, includes five high-impact security focus areas, known as national priority areas (NPAs). These are: (1) enhancing the protection of soft targets and crowded places; (2) supporting Homeland Security Task Forces and fusion centers; (3) enhancing and integrating cybersecurity resiliency; (4) enhancing election security; and (5) Supporting border crisis response and enforcement. All of the FY 2026 NPAs support law enforcement and national security activities and are designed to direct funds to projects that most effectively effectuate the grant's terrorism prevention purpose.

The fifth NPA, supporting border crisis response and enforcement, also unscored the nexus between the statutory purpose of SHSP and immigration activities. In fact, the NOFO states that activities that support the NPA may include: participation in the Department of Homeland Security/Immigration and Customs Enforcement 287(g) training program; cooperation with Immigration and Customs Enforcement detainers; and other jurisdictional responsibilities to support the enforcement of United States immigration law.

Moreover, the purpose of a SHSP grant is potentially frustrated if a State, territory, tribe, or local government receives a grant to protect against a threat to national security from terrorism while that same State or territory refuses to coordinate and share information with the Department related to law enforcement, including by violating applicable federal statutes taking other actions designed to hinder support for immigration law enforcement. Refusals to coordinate and share information, and hindering federal law enforcement, have a negative impact on the effective use of the grant funding to achieve target capabilities that will reduce the relative risk of terrorism.

### 4. Urban Area Security Initiative

FY 2026 Funding Amount: $553,500,000

Purpose: Financial assistance to high-risk urban areas in building and sustaining capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

Award Criteria: Awards based on risk calculated using statutorily required criteria. Discretion in determining how many high-risk urban areas shall receive funding through a State, but that discretion is often limited or guided by Congress through the annual appropriations process.

Nexus: High-threat urban area protection.

Analysis: The Urban Area Security Initiative (UASI) targets high-density, high-threat metropolitan areas to build capability to respond to terrorist attacks. Its sole purpose is terrorism prevention and response in vulnerable target zones, establishing a nexus to law enforcement and national security.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" to future grant awards.

Rationale: The statute does not set forth a mandatory formula for distribution, but rather provides discretion in how to evaluate risk according to statutory factors and make award decisions. FEMA, accordingly, could impose this condition on States receiving grant awards because there is a rational relationship between the purpose of the UASI to assist State, local, and tribal governments in preventing, preparing for, protecting against, and responding to acts of terrorism and the purpose of the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials".

The UASI statute establishes that the program's purpose is "to provide grants to assist high-risk urban areas in preventing, preparing for, protecting against, and responding to acts of terrorism." 6 U.S.C. 604(a). Funds are allocated based on each jurisdiction's "relative threat, vulnerability, and consequences from acts of terrorism" and "anticipated effectiveness of the proposed use of the grant by the State or high-risk urban area in increasing the ability of that State or high-risk urban area to prevent, prepare for, protect against, and respond to acts of terrorism." 6 U.S.C. 608(a).

In addition, the statute requires "that not less than 25 percent of the total combined funds appropriated . . . is used for law enforcement terrorism prevention activities." 6 U.S.C. 607(a)(1). This can include: information sharing and analysis; target hardening; threat recognition; terrorist interdiction; training exercises to enhance preparedness for and response to mass casualty and active shooter incidents and security events at public locations, including airports and mass transit systems; overtime expenses consistent with a State homeland security plan, including for the provision of enhanced law enforcement operations in support of Federal agencies, including for increased border security and border crossing enforcement; establishing, enhancing, and staffing with appropriately qualified personnel State, local, and regional fusion centers; paying salaries and benefits for personnel, including individuals employed by the grant recipient on the date of the relevant grant application, to serve as qualified intelligence analysts; and any other terrorism prevention activity authorized by the FEMA Administrator. 6 U.S.C. 607(a)(2).

For FY 2026, the HSGP NOFO, which covers UASI, includes five high-impact security focus areas, known as national priority areas (NPAs). These are: (1) enhancing the protection of soft targets and crowded places; (2) supporting Homeland Security Task Forces and fusion centers; (3) enhancing and integrating cybersecurity resiliency; (4) Enhancing election security; and (5) Supporting border crisis response and enforcement. All of the FY 2026 NPAs support law enforcement and national security activities and are designed to direct funds to projects that most effectively effectuate the grant's terrorism prevention purpose.

The fifth NPA, supporting border crisis response and enforcement, also unscored the nexus between the statutory purpose of SHSP and immigration activities. In fact, the NOFO states that activities that support the NPA may include: participation in the Department of Homeland Security/Immigration and Customs Enforcement 287(g) training program; cooperation with Immigration and Customs

Enforcement detainers; and other jurisdictional responsibilities to support the enforcement of United States immigration law.

Moreover, the purpose of an UASI grant is potentially frustrated if a State receives a grant award to protect against a threat to national security from terrorism while that same State refuses to coordinate and share information with the Department related to law enforcement, including by violating applicable federal statutes taking other actions designed to hinder support for immigration law enforcement. Refusals to coordinate and share information and hindering federal law enforcement have a negative impact on the effective use of the grant funding to achieve target capabilities that will reduce the relative risk of terrorism.

**5. Operation Stonegarden**

FY 2026 Funding Amount: $81,000,000

Purpose: Operation Stonegarden funds target expenditure by local governments for the purpose of border protection and border security.

Award Criteria: Discretionary, competitive awards to States with 100 percent of funds sub-awarded to local law enforcement. The Department adopts the requirement for competition and criteria for this award that is provided for in the legislative history of the appropriations act funding the program.

Nexus: Border security and joint law enforcement operations.

Analysis: Operation Stonegarden is designed to enhance cooperation among local, State, tribal, and federal law enforcement agencies to secure international land and water borders. This directly involves immigration enforcement support and border security operations, creating a direct nexus to immigration activities. While this program was a “green” program in 2025, FEMA recommends this program be designated as a “red” program in 2026.

Operation Stonegarden is designed to improve cooperation among law enforcement agencies to secure the international borders of the United States. Grant-funded activities depend on coordination, information sharing, joint planning, and operational cooperation across levels of government. Recipients and subrecipients that restrict communication or cooperation with DHS or immigration officials could impede information sharing, create operational gaps, undermine joint planning, and reduce the effectiveness of border security operations.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration Officials” on future grant awards.

Rationale: The statute does not set forth a mandatory formula for distribution, but rather provides discretion to make grant awards.

FEMA, accordingly, could impose this condition on receiving grant awards because there is a rational relationship between the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration

Officials" and the purpose of the program to assist States, territories, and local and tribal governments in preventing, preparing for, protecting against, and responding to acts of terrorism.

Operation Stonegarden is governed by 6 U.S.C. §§ 603, 605–609, which requires a nexus exist between the use of the funds and preventing, protecting against, preparing for, or responding to acts of terrorism. Funds are allocated based on each jurisdiction's "relative threat, vulnerability, and consequences from acts of terrorism" and "anticipated effectiveness of the proposed use of the grant by the State or high-risk urban area in increasing the ability of that State or high-risk urban area to prevent, prepare for, protect against, and respond to acts of terrorism." 6 U.S.C. 608(a).

The purpose of Operation Stonegarden is potentially frustrated if a State, territory, tribe, or local government receives a grant to protect against a threat to national security from terrorism while that same State or territory refuses to coordinate and share information with the Department related to law enforcement, including by violating applicable federal statutes taking other actions designed to hinder support for immigration law enforcement. Refusals to coordinate and share information, and hindering federal law enforcement, have a negative impact on the effective use of the grant funding to achieve target capabilities that will reduce the relative risk of terrorism.

### 6. Port Security Grant Program

FY 2026 Funding Amount: $95,000,000

Purpose: Assistance to port authorities, facility operators, and state and local governments for maritime transportation infrastructure security.

Award Criteria: Statute requires that funds be allocated based on risk, but otherwise discretionary.

Nexus: Maritime critical infrastructure protection.

Analysis: The Port Security Grant Program (PSGP) builds security capabilities at maritime ports of entry, which are vital border locations. Protecting these boundaries and supporting maritime law enforcement activities establishes both a national security and a border enforcement nexus.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on future grant awards to States, territories, or local governments.

Rationale: The statute requires the allocation of funding based on risk, but otherwise provides discretion to the Department to establish additional grant conditions related to risk and the purpose of the program. FEMA, accordingly, could impose the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on receiving grant awards as there is a rational relationship between the purpose of this program and the purpose of the term.

This is because the purpose of the program is potentially frustrated if the Department awards grants funds to a State, territory, or local government to protect against threats to maritime transportation infrastructure while that same State, territory, or local government refuses to coordinate and share

information with the Department related to law enforcement, including by violating applicable federal statutes and taking other actions designed to hinder support for immigration law enforcement. Refusals to coordinate and share information, and hindering federal law enforcement, have a negative impact on the effective use of the grant funding to reduce risk to maritime transportation infrastructure.

### 7. Homeland Security National Training Program – Continuing Training Grants Competitive

FY 2026 Funding Amount: $5,700,000

Purpose: To help training partners develop and deliver training to prepare whole communities to prevent, protect against, mitigate, respond to, and recover from acts of terrorism, and natural, man-made, and technological hazards.

Award Criteria: Discretionary, no statutory award criteria. Per the Fiscal Year 2026 NOFO, the Joint Explanatory Statement accompanying the Fiscal Year 2026 DHS Appropriations Act (Pub. L. No. 118-47) directs Continuing Training Grants to be competitively awarded for FEMA-certified rural and tribal training.

Nexus: Responder capability building for countering terrorism and other security threats.

Analysis: This program funds targeted training for first responders and law enforcement on handling active threats, weapons of mass destruction, and tactical responses. Building these specialized law enforcement capabilities directly supports national counter-terrorism efforts.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on future grant awards.

The awarding of funds under the Program is discretionary without any statutory award criteria. Thus, FEMA has substantial discretion to design the grant program, establish substantive grant conditions, establish eligibility criteria, and establish evaluation criteria. FEMA, accordingly, could apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" as there is a rational relationship between the Program's purpose (as designed by FEMA to provide training to prepare for, respond to, and recover from all hazards in furtherance of the National Preparedness Goal and the purpose of the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials".

This is because the purpose of a grant would be frustrated if States, territories, and local governments delivering training are, in turn, violating federal statutes and not taking other actions designated to support immigration law. Immigration enforcement relates to national security and all-hazards preparedness training by States, territories and local governments—which will include training concerning law enforcement emergencies—who do not treat all aspects of national security seriously will be less effective.

For example, a local government county recipient may conduct training under a grant to its respective local governments on responding to a law enforcement emergency. If the recipient deemphasizes full collaboration with federal law enforcement when conducting the training, there could be an increased risk of unaddressed vulnerabilities in the trained local government, especially in areas like counterterrorism. This, in turn, would compromise the all-hazards preparedness of the trained community, which is what the grant program is aiming to protect

**8. Regional Catastrophic Preparedness Grant Program**

FY 2026 Funding Amount: $11,400,000

Purpose: Supports the building of core capabilities essential to achieving the National Preparedness Goal of a secure and resilient nation by providing resources to close known capability gaps in Housing and Logistics and Supply Chain Management, encouraging innovative regional solutions to issues related to catastrophic incidents, and building on existing regional efforts.

Award Criteria: Discretionary program with no statutory award criteria. This program is administered through a competitive selection process.

Nexus: Catastrophic threat management.

Analysis: The Regional Catastrophic Preparedness Grant Program focuses on regional coordination to manage large-scale catastrophic incidents, including major terrorist attacks. This large-scale readiness is essential for national continuity and homeland defense.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on future grant awards.

Rationale: The statute does not set forth a mandatory formula for distribution, but rather provides very broad discretion in setting the purpose of the program, establishing substantive conditions, establishing eligibility criteria, and establishing evaluation criteria. FEMA, accordingly, could impose the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" on receiving grant awards as there is a direct relationship between the purpose of the program of national preparedness and security and the purpose of the term.

This is because the purpose of the program is frustrated if the Department awards grants funds to a State, territory, or local government to build State, territory, or local government capacity to manage catastrophic incidents by improving and expanding regional collaboration among emergency managers and federal, preparedness stakeholders and that same recipient, in turn, refuses to coordinate and share information with the Department related to law enforcement, including by violating applicable federal statutes.

**9. Transit Security Grant Program**

FY 2026 Funding Amount: $88,350,000

Purpose: This program provides funds to public transit agencies to protect critical surface transportation infrastructure and the traveling public from acts of terrorism.

Award Criteria: Discretionary, competitive awards based on statutory criteria that require prioritization of funding based on risk.

Nexus: Transportation infrastructure security.

Analysis: The Transit Security Grant Program (TSGP) protects surface transportation systems and travelers from acts of terrorism. Because it focuses on safeguarding public soft targets through law enforcement and security enhancements, it directly supports national security.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration Officials” to future grant awards.

The statute does not set forth a mandatory formula for distribution, but rather provides discretion in how to evaluate risk and make award decisions based on that risk. The statute also provides discretion to determine the requirements for recipients and establish priorities for how grant funds may be used. FEMA, accordingly, could impose the Fiscal Year 2026 DHS Standard Term and Condition titled “Communication and Cooperation with the Department of Homeland Security and Immigration Officials” because there is a rational relationship between the purpose of the term and the purpose of the grant to improve the security of public transportation infrastructure.

This is because the purpose of the TSGP grant is frustrated if a State, territory, or local government public transportation agency recipient receives a grant award to make security improvements to public transportation infrastructure, in turn, refuses to coordinate and share information with the Department related to law enforcement, including by violating applicable federal statutes and taking other actions designed to hinder immigration law enforcement. For example, one of the authorized statutory uses of grant funds are operational costs, including reimbursement of State, territory, and local governments for costs for personnel assigned to full-time or part-time security or counterterrorism duties related to public transportation. Refusals to coordinate and share information, and hindering federal law enforcement, have a negative impact on the effective use of the grant funding to achieve increased security of public transportation infrastructure.

**10. Securing the Cities**

FY 2026 Funding Amount: $12,600,000

Purpose: Securing the Cities (STC) reduces the risk of a successful deployment of nuclear or radiological weapons against 14 major metropolitan areas in the United States. This grant program assists State and local partner agencies as they build regional capabilities to detect, analyze, and report nuclear and other radioactive materials.

Award Criteria: Cooperative agreement; 14 pre-identified major metropolitan areas based on risk.

Nexus: Radiological and nuclear threat detection.

Analysis: STC operates in high-risk urban areas to detect and prevent unauthorized attempts to use nuclear or radiological materials. This is a high-level counter-terrorism and national security initiative designed to prevent catastrophic attacks. The program's objectives include providing resources to enhance detection, analysis, communication, and coordination to better integrate state, local, tribal, and territorial assets into Federal operations. The STC program assists state and local governments, primarily law enforcement and other first responders, in building capabilities to detect the presence of unregulated radiological and nuclear materials to prevent their use in a terrorist or other deliberate attack.

Approach: Apply the Fiscal Year 2026 DHS Standard Term and Condition titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" to future grant awards.

Rationale: STC protects communities from the risk that an individual immigrating illegally would seek to import or use biological agents or nuclear materials for the purpose of terrorism. The purposes of these programs could be undermined if the Department were to award funds to local governments that are violating federal statutes and policies designed to support immigration law enforcement to protect national security. In creating DHS, Congress expressly found that "[t]he Federal Government relies on State and local personnel to protect against terrorist attacks." 6 U.S.C. § 481 (b)(2).

This is particularly true as to information sharing. The 9/11 Commission expressly recognized failures in information sharing between law enforcement agencies as a cause of terrorist attacks. Its Report recognized "pervasive problems of managing and sharing information across a large and unwieldy government." 9/11 Commission Report at xvi. Similarly, in creating DHS, Congress expressly found that "State and local personnel have capabilities and opportunities to gather information on suspicious activities and terrorist threats not possessed by Federal agencies." 6 U.S.C. § 481 (b)(8).

FEMA

U.S. Department of Homeland Security
Washington, D.C. 20472

**October 8, 2026**

MEMORANDUM FOR: Pamela S. Williams
Acting Deputy Assistant Administrator
Grant Programs Directorate, Resilience

PAMELA S WILLIAMS Digitally signed by PAMELA S WILLIAMS Date: 2026.10.08 13:36:40 -04'00'

FROM: David O'Leary (on behalf of TeNeane Bradford)
Division Director
Office of Grants Administration, Grant Programs Directorate, Resilience

DAVID P OLEARY Digitally signed by DAVID P OLEARY Date: 2026.10.08 10:52:11 -04'00'

SUBJECT: Justification for Term Inclusion: FY 2026 Fusion Center Intelligence Support, Coordination, and Reporting Terms and Conditions within the Homeland Security Grant Program (HSGP) Awards.

## I. Purpose

This memorandum documents the rationale and statutory basis for including a specific term and condition titled "Fusion Center Intelligence Support, Coordination, and Reporting" (the "Fusion Center Term") in fiscal year (FY) 2026 Homeland Security Grant Program (HSGP) awards. The decision to include the Fusion Center Term was finalized on August 20, 2026, in consultation with the Department of Homeland Security (DHS) Office of Intelligence and Analysis (I&A) and other appropriate DHS officials. This memorandum also describes the administrative correction required because an earlier, incorrect draft of the Fusion Center Term was inadvertently included in the initial award packages.

## II. Background

HSGP is a primary federal funding source for the nation's network of state, local, tribal, and territorial fusion centers. Baseline requirements applicable to fusion centers are included in the annual Preparedness Grants Manual, which is expressly incorporated into HSGP awards.

The corrected Fusion Center Term supplements those baseline requirements by directing fusion centers receiving FY 2026 HSGP funds to provide intelligence support in four areas:

1. Supporting the appropriate regional Homeland Security Task Force (HSTF);

2. Supporting federal law enforcement actions against identity theft and related crimes;
3. Supporting federal initiatives to trace proceeds from federal benefit fraud that are sent to foreign recipients, focusing on terrorist and transnational criminal organizations; and
4. Prioritizing intelligence activities according to the Homeland Security Intelligence Priorities Framework (HIPF).

The Fusion Center Term requires fusion centers to provide quarterly updates to the Federal Emergency Management Agency's (FEMA) Grants Programs Directorate. These updates are expected to include a general description of the support provided and applicable performance metrics, such as the number of tips, leads, or Suspicious Activity Reports (SARs) provided to federal partners; personnel assigned to an HSTF; joint HSTF analytic products; intelligence concerning identity theft and fraudulent identity documents; information regarding participation in DHS 287(g) programs; intelligence concerning suspected federal benefit fraud; and products analyzing outbound remittances or wire transfers linked to suspected benefit fraud.

The Term also requires fusion centers to describe how they use the HIPF to allocate resources and personnel. Intelligence products must identify the relevant HIPF priority topic, and most intelligence products must align with Priority One topics.

### III. Rationale for Including the Fusion Center Term

Historically, DHS and FEMA have lacked sufficiently specific and measurable information about how fusion centers use HSGP funds. This has limited FEMA's ability to assess the extent to which funded activities advance HSGP objectives.

Including the Fusion Center Term in FY 2026 HSGP awards is intended to:

1. Strengthen accountability for fusion centers receiving HSGP funds;
2. Establish consistent quarterly reporting regarding specified activities and operational outputs;
3. Improve visibility into how grant-supported personnel and resources advance federal homeland security priorities; and
4. Provide FEMA with information to evaluate whether grant-supported fusion center activities further HSGP objectives.

The quarterly updates are expected to address fusion center support for regional HSTFs, federal law enforcement actions against identity theft and related crimes, efforts to trace proceeds from federal benefit fraud sent to foreign recipients, and intelligence activities aligned with the HIPF. This reporting will provide FEMA with more consistent information concerning grant-supported activities, operational outputs, partnerships, and resource allocation.

### IV. Connection to the HSGP Statutory Authority

The statutory authorities governing HSGP support the inclusion of the Fusion Center Term. The Urban Area Security Initiative (UASI), under 6 U.S.C. § 604(a), and the State Homeland Security Grant Program (SHSP), under 6 U.S.C. § 605(a), provide grants to assist state, local, and tribal governments, including high-risk urban areas, in preventing, preparing for, protecting against, and responding to acts of terrorism. Requiring grant-supported intelligence activities to align with the HIPF advances this statutory purpose.

Under 6 U.S.C. § 607(a)(1) and (2), not less than 25 percent of the combined funds appropriated for UASI and SHSP must be used for law enforcement terrorism prevention activities. The statute identifies eligible activities that include:

- Information sharing and analysis, under 6 U.S.C. § 607(a)(2)(A);
- Establishing, enhancing, and staffing state, local, and regional fusion centers, under 6 U.S.C. § 607(a)(2)(G); and
- Paying salaries and benefits for qualified intelligence analysts, under 6 U.S.C. § 607(a)(2)(H).

Similarly, 6 U.S.C. § 609(a)(7) and (11) permits recipients to use grant funds to establish, enhance, and staff fusion centers and to pay salaries and benefits for qualified intelligence analysts.

In addition, 6 U.S.C. § 608(a)(2) provides that, when allocating funds, the FEMA Administrator shall consider "the anticipated effectiveness of the proposed use of the grant . . . in increasing the ability of that State or high-risk urban area to prevent, prepare for, protect against, and respond to acts of terrorism." The Fusion Center Term establishes reporting mechanisms, including quarterly updates concerning operational activities, outputs, personnel, partnerships, and resource allocation. This information will assist FEMA in evaluating the effectiveness of proposed and funded fusion center activities and administering HSGP consistent with this statutory direction.

## V. Correction of Administrative Error in Fiscal Year 2026 HSGP Award Packages

FEMA recently determined that the initial FY 2026 HSGP award packages inadvertently included an earlier, incorrect draft of the Fusion Center Term.

To remedy this error, FEMA is amending the affected award packages to replace the incorrect draft with the approved version of the Fusion Center Term. This administrative correction will ensure that the award conditions accurately reflect the policy decision finalized on August 20, 2026, in consultation with DHS I&A and other appropriate DHS officials.

## VI. Conclusion

FEMA is amending the affected FY 2026 HSGP award packages to replace the incorrect draft

with the approved version of the Fusion Center Term. Amending the Fusion Center Term supplements baseline requirements by directing applicable fusion centers recipients of FY 2026 HSGP funds to provide intelligence support as well as requiring descriptions of how recipients use the HIPF to allocate resources and personnel.

This improved reporting will provide DHS and FEMA with more consistent information concerning grant-supported activities, operational outputs, partnerships, and resource allocation related to how fusion centers use HSGP funds.

This administrative correction will ensure that the award conditions accurately reflect the policy decision finalized on August 20, 2026, in consultation with DHS I&A and other appropriate DHS officials.

Thank you for your consideration.